[No. 1184. Decided June 27, 1894.]

J. M. BUCKLEY, *Appellant*, v. THE CITY OF TACOMA *et al.*, *Respondents*.

[No. 1188. Decided June 27, 1894.]

ROBERT WINGATE, *Appellant*, v. THE CITY OF TACOMA *et al.*, *Respondents*.

MUNICIPAL CORPORATIONS — STREET IMPROVEMENTS — AUTHORIZED AGAINST REMONSTRANCE — VOTE OF COUNCIL.

Under the provisions of the charter of the city of Tacoma requiring the passage of a resolution for the improvement of a street over the remonstrance of abutting property owners to be adopted by a two-thirds vote of the council, the journal must show that two-thirds of the council actually voted to order such improvement, and no presumption of compliance with the charter can be drawn from the passage of the resolution by a *viva voce* vote.

The denial by the city council of the remonstrance, although agreed to by a two-thirds vote, would not be sufficient to authorize the board of public works to proceed with the improvement, but the council should pass a resolution reciting the fact of the remonstrance being filed, and ordering the board to proceed notwithstanding.

*Appeal from Superior Court, Pierce County.*

*Doolittle & Fogg* ( *Charles O. Bates*, of counsel, ) and *S. C. Milligan*, for appellants.

*F. H. Murray*, and *S. A. Crandall*, for respondents.

The opinion of the court was delivered by

STILES, J.—These cases rest upon substantially the same points as those made in *Buckley v. Tacoma* (No. 1233)

and *Wingate v. Tacoma* (No. 1234), *ante*, p. 253, the improvement being that of Oak street from Ross avenue to I street. There was a petition from the owners of lots representing 368 feet of frontage, and a remonstrance from owners of 4,325 feet, the total frontage being 6,422 feet. A diagram was filed, though it is not in the record, and there was, perhaps, a nearer approach to compliance with the charter here than in the case of N street.

A fatal defect exists, however, in the treatment of the remonstrance by the council. The board of public works formally recommended the granting of the remonstrance. This recommendation was referred to the street committee of the council, which reported advising that the remonstrance be denied. This report the council adopted, as the journal shows, but it does not show by what vote. The clerk testifies that it was probably by a *viva voce* vote. No other action was taken by the council in the matter. Counsel for respondent asks us to presume that the vote by which the report of the street committee was adopted was a two-thirds vote of all the members of the council, and to hold that such adoption was equivalent to the passage of a resolution ordering the improvement notwithstanding the remonstrance. Now the council consisted of sixteen members and it required the affirmative vote of eleven members to overcome the remonstrance. It could not be ascertained whether the requisite number voted in any other way than by roll call or count. The *viva voce* vote which the clerk recorded may have been merely the ayes of half a dozen members, the remainder keeping silent. Nothing is more common in legislative bodies than the passage of orders in this way; for so long as a quorum is maintained a majority of *viva voce* votes according to the judgment of the presiding officer will prevail. But in no case where a fixed proportion of members must vote to

carry a measure is it possible to ascertain the result by the *viva voce* plan.

The record being thus bare of facts to sustain the proposition that the committee report was adopted by the vote of eleven or more members, the burden was upon the respondent to establish it; but it failed therein, as the testimony of the clerk showed still more conclusively that nobody knew what the real vote was.

We have treated this question thus far as though the adoption of the report, by vote of eleven members, would have been equivalent to an order that the improvement be made notwithstanding the remonstrance.   But such a procedure would not do.   What would the city clerk certify to the board of public works—his conclusion, from the journal, that the remonstrance had been denied?   Plainly not.   On the contrary the "*order*" which the charter requires should be in the form of another resolution reciting the fact that a remonstrance had been filed, and ordering the board to proceed notwithstanding.   In no other way is it possible to keep such business from falling into confusion and entailing misunderstanding of authority and consequent loss.

This was an important matter.   More than ten times the representation of property petitioning for the improvement of Oak street remonstrated against it, and the board of public works, presumably after examining into the matter, recommended that it be not made, yet it was proposed to go on.   Grave public reasons alone could justify the exercise of the authority vested in the council to disregard the objection made, and it was a case where, if ever, the strict letter of the charter should be followed.

Judgments reversed, and causes remanded for entry of judgments in accordance with the prayer of the complaints.

DUNBAR, C. J., and ANDERS and SCOTT, JJ., concur.