FOREST HILL CEMETERY CO. *v.* CITY OF ANN ARBOR.

1. CEMETERIES—LANDS—EXEMPTIONS—TAXATION—SPECIAL ASSESS-MENTS.

   The lands of a cemetery association used for cemetery purposes are exempt from general taxes by virtue of statute and cannot be subjected to a lien for special assessment for a street improvement because of settled policy of the State respecting such places (1 Comp. Laws 1929, § 3395, as amended by Act No. 243, Pub. Acts 1933).

2. SAME—PERSONALTY—SPECIAL ASSESSMENTS—STREET IMPROVE-MENTS.

   Since the upkeep, care and maintenance of a cemetery are necessary to carry out the policy of preserving and maintaining the burial places of the dead, personal property of a nonprofit cemetery corporation may not be subjected to levy and sale for satisfaction of special assessments for street improvement (Comp. Laws 1929, § 3395, as amended by Act No. 243, Pub. Acts 1933; § 10401 *et seq.*).

3. SAME—FUNDS—EXEMPTIONS—TRUSTS—SPECIAL ASSESSMENTS.

   Endowment fund reserve, perpetual care reserve and surplus fund for care and upkeep of nonprofit cemetery corporation, although not exempt by statute, are not subjected to payment of special assessments for street improvement since they are of a trust nature, where their depletion might result in irreparable injury to financial condition of corporation which does not appear to have a surplus of income from which the assessments may be paid (2 Comp. Laws 1929, § 10401 *et seq.*).

4. SAME—MAINTENANCE—PROFIT CORPORATIONS.

   Fact that a nonprofit cemetery corporation is not required to pay special assessments for improving adjacent streets would not exempt it from liability for indebtedness incurred for labor, materials and equipment used in connection with the upkeep, care and maintenance of the cemetery nor necessarily exempt a cemetery corporation organized for profit from payment of special assessment for like purpose (2 Comp. Laws 1929, § 10401 *et seq.*).

5. SAME—SPECIAL ASSESSMENTS—LIMITATION OF ACTIONS.

   The statute of limitations is not a bar to a suit by a nonprofit cemetery corporation to enjoin collection of special assess-

ments for street improvements, commenced more than six years after assessments were confirmed (3 Comp. Laws 1929, § 13976).

6. SAME—SPECIAL ASSESSMENTS—VALIDITY—LACHES.

Nonprofit cemetery corporation, by waiting 10 years after confirmation of special assessment for improvement of adjacent streets thereof, and after voluntary payment of some instalments, did not waive or become estopped to urge it was not subject to payment of such assessment because of laches, since such defense is not available where its cemetery land was exempt from lien for special assessments (Comp. Laws 1929, § 3395, as amended by Act No. 243, Pub. Acts 1933; § 10401 *et seq.*).

7. INJUNCTION—HIGHWAYS AND STREETS—SPECIAL ASSESSMENTS—PAYMENT UNDER PROTEST—ADEQUATE REMEDY AT LAW.

Since special assessment for street improvements may not be recovered, though paid under protest, except as provision therefor has been made in statute or charter, where no provision was made therefor in charter of city in which plaintiff cemetery corporation's property was located, suit to enjoin collection of such assessments was not subject to defense that plaintiff had an adequate remedy at law, the remedy provided for recovery of general taxes not being available for special assessments (Comp. Laws 1929, § 3507; § 10401 *et seq.*).

8. TAXATION—INJUNCTION.

Generally equity will not enjoin the collection of taxes.

9. INJUNCTION—SPECIAL ASSESSMENTS—CEMETERY CORPORATION.

In view of the fact that serious and irreparable injury would result to plaintiff nonprofit cemetery corporation if city were allowed to collect remaining instalments of special assessments for improvement of adjacent streets for which corporation was not liable, injunction against city to restrain such collection was proper (2 Comp. Laws 1929, § 10401 *et seq.*).

Appeal from Washtenaw; Sample (George W.), J. Submitted June 3, 1942. (Docket No. 19, Calendar No. 41,927.) Decided September 8, 1942.

Bill by Forest Hill Cemetery Company, a Michigan corporation, against City of Ann Arbor and others to restrain collection of amounts due on special assessments and for recovery of special as-

sessments paid. From decree granting injunction, defendants appeal. Affirmed.

*Burke & Burke* (*Rowan Fasquelle,* of counsel), for plaintiff.

*William M. Laird,* for defendants.

STARR, J. Plaintiff was incorporated in about 1857 as a nonprofit corporation under Act No. 87, Pub. Acts 1855 (2 Comp. Laws 1929, § 10401 *et seq.* [Stat. Ann. § 21.821 *et seq.*]), known as "An act relative to burying grounds." Plaintiff acquired certain lands within the corporate limits of defendant city of Ann Arbor and has improved and continuously used the same for cemetery purposes. About 14,000 persons have been buried in such cemetery. Plaintiff sold lots for burial purposes and issued deeds or certificates therefor. It also issued "memorial endowment certificates." Plaintiff's financial statement as of October 31, 1940, shows personal property consisting principally of an "endowment fund reserve" of about $19,000, a "perpetual care reserve" of about $58,000, and a balance or surplus of about $32,000. Plaintiff's treasurer testified that such surplus was the "result of an accumulation from time to time, and is not earmarked for any other purpose other than the care and upkeep of the cemetery."

Plaintiff's cemetery lands were bounded on the south by Geddes avenue and on the west by Observatory street. In April, 1924, the common council of defendant city confirmed a special assessment for the paving of Geddes avenue and assessed plaintiff's land $8,957.85, payable in 10 equal annual instalments of $895.79 and interest. Plaintiff, without protest, paid the first six annual instalments for the years 1924 to 1929, both inclusive, together with interest and collection fees. Four annual instal-

ments of such special assessment remain unpaid. In April, 1925, the common council of defendant city confirmed a special assessment for the paving of Observatory street and assessed plaintiff's land $4,777.90, payable in 10 equal instalments of $477.79 and interest. Plaintiff, without protest, paid the first five annual instalments for the years 1925 to 1929, both inclusive, together with interest and collection fees. Five annual instalments of such special assessment remain unpaid.

No action appears to have been taken by either party regarding the unpaid instalments of the two special assessments until about 1935. Plaintiff then declined to pay such remaining instalments, on the ground that its property was exempt from taxation and that both special assessments were illegal and void. In December, 1935, the common council of defendant city authorized its city treasurer to collect the unpaid instalments of the assessments and in default thereof to levy upon plaintiff's personal property.

In January, 1936, plaintiff began the present chancery action to perpetually restrain defendants from collecting the unpaid instalments of both special assessments either by levy on its lands or by levy and sale of its personal property, and also to recover the instalments which plaintiff had paid on both assessments. Plaintiff alleged, in substance, that its property was exempt from taxation and from such special assessments and that both assessments were illegal and void. Defendants answered denying plaintiff's right to maintain such action and its right to the relief sought.

The case was tried in November, 1940. On September 22, 1941, the trial court entered decree, in effect determining the special assessments on plaintiff's cemetery property to be illegal and void. Such decree also permanently enjoined defendants from

"attempting to collect said tax assessments or to levy by a distress and sale of the goods and chattels of the plaintiff." The decree also denied plaintiff's right to recover the instalments it had paid on such special assessments, on the ground that its claim was barred by the statute of limitations (3 Comp. Laws 1929, § 13976 [Stat. Ann. § 27.605]). Defendants appeal from such decree. Plaintiff does not appeal from that portion of the decree denying recovery of the instalments paid.

While admitting, in effect, that it does not have a lien upon plaintiff's cemetery land and cannot collect such special assessments by levy and sale of the land, defendant city nevertheless contends that it has the right under its charter to collect the unpaid instalments of such assessments either by law action against plaintiff or by levy on its personal property. Defendants contend further that plaintiff's present suit was barred by its laches and also by the statute of limitations; that plaintiff had an adequate remedy at law and that it was not entitled to the injunctive relief granted.

In pursuance of the provisions of its charter, defendant city, by action of its common council, attempted to make such special assessment taxes a lien upon plaintiff's cemetery land. Section 3395, 1 Comp. Laws 1929, as last amended by Act No. 243, Pub. Acts 1933 (Comp. Laws Supp. 1935, § 3395, Stat. Ann. § 7.7), provides, in part:

"The following real property shall be exempt from taxation: * * *

"Sixth, All lands used exclusively as burial grounds, and the rights of burial therein, and the tombs and monuments therein, while reserved and in use for the purpose."

Other provisions of the above-cited statute exempting lands of the State and of "library, benev-

olent, charitable, educational or scientific institutions" from taxation, have been held to exempt the lands only from general taxes and not from special assessments. *In re Petition of Auditor General*, 226 Mich. 170; *City of Big Rapids* v. *Mecosta Board of Supervisors*, 99 Mich. 351.

However, the law is well established in this State that the lands of a cemetery association, used for cemetery purposes, cannot be subjected to a lien for a special assessment for street improvement and cannot be sold to satisfy such an assessment. *Woodmere Cemetery Association* v. *City of Detroit*, 192 Mich. 553; *While Chapel Memorial Association* v. *Willson*, 260 Mich. 238. In *Avery* v. *Forest Lawn Cemetery Co.*, 127 Mich. 125, 129, we said:

"It is the settled policy of this State, in common with the universal sentiment of mankind, *to preserve and maintain* the burial places of the dead. The legislature has, by express enactment, prohibited the sale, except for burial purposes, or mortgaging, of lands set apart for cemetery purposes. It has also in express terms provided for the exemption from levy and sale on execution, or upon any other final process of a court, of all cemeteries, et cetera, while in use as repositories of the dead. This was within the power of the legislature to do, and so careful has the legislature been to preserve such properties for burial purposes that it has also in express terms taken it out of the power of the court of chancery to decree satisfaction of any judgment out of such exempt property."

Under the above-expressed policy of this State it is as essential to protect the personal property of a cemetery company from levy and sale as it is to protect the land used for cemetery purposes from a lien and sale. The upkeep, care and maintenance of a cemetery are necessary to carry out the policy of preserving and *maintaining* the burial places of the

dead. If the funds obtained and accumulated for such purposes can be taken to satisfy a special assessment for street improvement, then the State policy is not carried out. A cemetery without funds and equipment for its upkeep, care, and maintenance would soon deteriorate into an unsightly and disgraceful condition.

It is impossible to reconcile the State's policy to "preserve and *maintain* the burial places of the dead" with any policy permitting the levy and sale of any part of the cemetery company's personal property which is necessary for the care and maintenance of the cemetery.

In *Woodmere Cemetery Association* v. *City of Detroit, supra,* an equally divided court affirmed the trial court's decree holding that plaintiff's cemetery property was exempt from a lien for a special assessment for street paving. Whether the personal property of plaintiff association could be taken by execution to satisfy such special assessment was also considered. We agree with Mr. Justice Ostrander who, writing for affirmance, said, p. 559:

"Whether the city may sue the owner of the property as for a debt (see Charter, § 221),* in any case where a special assessment for paving has been laid and is not paid, is not in this case a material question. * * * It is impossible to consider whether the property of complainant is exempt from the particular tax or assessment, apart from the (charter) remedy provided for the collection of the tax. If the property is exempt from the lien, it is exempt from the tax. In my opinion, the property here in question is exempt from the particular (special assessment) tax. It is exempt from the general taxes by virtue of 1 Comp. Laws [1897], § 3830 (1 Comp. Laws 1915, § 4001); it is exempt from the particular (special assessment) tax *by virtue of a settled State policy.*"

---

* See Act No. 326, chap. 10, § 10, Local Acts 1883, as amended by Act No. 472, Local Acts 1901.—Reporter.

As plaintiff's cemetery land was exempt from lien for the special assessments in question, it is necessary and logical to conclude that under the "settled policy of this State" plaintiff's funds and personal property necessary for the upkeep, care and maintenance of the cemetery should also be protected against levy and sale.

In *Schaefer* v. *Woodmere Cemetery Association,* 256 Mich. 332, the city treasurer of Fordson sued the cemetery association in an action at law to recover general city taxes *and also a special assessment for street paving.* The record in such case shows a charter provision of the city of Fordson providing for the collection of such assessment "by distress or by an action at law in any court having jurisdiction, in the manner provided by law for the collection of taxes on personal property." In affirming judgment for defendant, Mr. Justice POTTER quoted with approval the following statement from *Staley* v. *Township of Columbus,* 36 Mich. 38:

" 'The only case provided for by statute wherein suit may be brought for unpaid taxes by the township is where taxes on personalty have been returned unpaid for want of property on which to levy. 1 Comp. Laws 1871, § 1014. In such case the treasurer may sue in the name of the township. Taxes on real estate [not cemetery land] may be collected by distress on goods and chattels (1 Comp. Laws 1871, § 1003), but if not so collected the tax is returned unpaid and the land sold to make it.' "

Our decision in *Schaefer* v. *Woodmere Cemetery Association, supra,* is in accord with our conclusion in the present case that the city of Ann Arbor cannot collect the unpaid instalments of the two special assessments by levy and sale of plaintiff's personal property. See, also, 25 R. C. L. p. 174; 5 McQuillin on Municipal Corporations (2d Ed.), p. 873, § 2284.

Plaintiff is a nonprofit corporation. Its personal property consists principally of certain reserve funds. Its annual statements show no surplus of income from which these special assessments could be paid. Payment of the unpaid instalments of the two assessments would materially reduce plaintiff's reserve funds. To take from the "endowment fund reserve," or from the "perpetual care reserve," or from the surplus fund for the "care and upkeep" of the cemetery, the amount necessary to pay these special assessments would be inequitable and might result in irreparable injury to plaintiff's financial condition. These funds, though not exempt by statute, are certainly of such a trust nature that they should not be violated or depleted through the payment of special tax assessments which were void as liens on plaintiff's land.

Our conclusion that defendant city cannot collect the unpaid instalments of the special assessments in question by levy and sale of plaintiff's personal property should not be construed as exempting a cemetery company from liability for indebtedness incurred for labor, materials, and equipment used in connection with the upkeep, care and maintenance of the cemetery. Furthermore, our conclusion would not necessarily apply to cemetery companies organized for profit.

Defendants contend that plaintiff's action is barred by the general statute of limitations, as plaintiff's suit was begun more than six years after the special assessments were confirmed. Defendant relies upon the case of *Campbell* v. *City of Plymouth*, 293 Mich. 84, in which we held that a suit questioning a special assessment could not be instituted more than six years after the taxes *became a lien upon the land*. Such decision is not applicable to the present case where the two special assessments in question did not become valid liens upon plaintiff's land. The

statute of limitations did not bar plaintiff's present action to enjoin the collection of such special assessments.

Defendants claim that plaintiff is barred by laches from maintaining the present suit, begun 10 years or more after the special assessments were confirmed and after plaintiff had without protest paid a part of such assessments. The rule properly applicable to the question of laches in the present case is stated in 9 A. L. R. p. 636, as follows:

"If any underlying principle can be said to govern the waiver, or the loss by estoppel, of the right to object to an assessment for a street or sewer improvement, it is that a property owner cannot ordinarily waive or become estopped to urge the invalidity of an assessment which is void by reason of an inherent defect, either of jurisdiction or of procedure."

The foregoing principle has been applied by this court in *Miller* v. *City of Detroit*, 244 Mich. 38. In that case the city, after annexing certain adjacent territory, changed the names of certain designated boulevards to streets and proceeded to levy a paving assessment on abutting property owners. The city charter provided, in substance, that the expense of paving boulevards should be borne by the city at large, and such provision, in effect, exempted the property of abutting owners from a special assessment for boulevard-paving purposes. The trial court entered a decree dismissing the bill of complaint, on the ground that plaintiffs were estopped by laches and waiver from attacking the legality of the assessment. In reversing such decree, we said, p. 40:

"Boulevards may be paved and a petition to that end may be signed by a lot owner without committing him to assessment liability. The action of the city,

in declaring the boulevards to be streets, was void. See *MacLachlan* v. *City of Detroit,* 208 Mich. 188, Plaintiffs are not estopped by laches or waiver, for such cannot be invoked under void proceedings."

In *Reliance Automobile & Supply Co.* v. *City of Jackson,* 244 Mich. 232, 236, Mr. Justice WIEST said in a concurring opinion:

"A property owner, standing by and permitting the paving, repairing, or repaving of a street, is estopped, by benefits and nonaction, from later defeating a tax by reason of mere irregularities. But, if the paving must be paid for in its entirety by the city, and the law governing the municipality forbids assessment of abutting property, *there can be no estoppel urged by the city or applied by the court, for in such case there is want of jurisdiction and not mere irregularity of procedure.*"

In the present case plaintiff's cemetery land was exempt from lien for the special assessments, and under the decisions above cited the defense of laches is not available.

We do not agree with defendants' contention that plaintiff had an adequate remedy at law and, therefore, could not maintain its present action. Such defense is based on the theory that plaintiff must pay the disputed instalments of the special assessments under protest and then raise the question of the legality of the assessments in a suit against the city to recover such payment. However, our attention has not been called to any provision of the charter of defendant city of Ann Arbor providing for the payment of special assessments under protest and subsequent suit to recover such payment. In *Reliance Automobile & Supply Co.* v. *City of Jackson, supra,* p. 236, we said:

"Special assessments paid may not be recovered, though paid under protest, except in accordance

with the statute. Our attention is called to no provision in the charter of the city of Jackson authorizing the payment of special assessments or any part thereof under protest and the recovery of moneys paid therefor by suit.''

See, also, *Brooks* v. *County of Oakland,* 268 Mich. 637.

Defendants rely upon our decision in *Congregation Ben Jacob* v. *City of Detroit,* 299 Mich. 652, as authority for their contention that plaintiff has an adequate remedy at law. In that case the statute involved expressly provided for payment of the tax under protest and for suit to recover if the tax was found to be illegal. Therefore, such decision has no application to the instant case.

Defendants also rely upon 1 Comp. Laws 1929, § 3507 (Stat. Ann. § 7.168), which provides:

''No injunction shall issue to stay proceedings for the assessment or collection of *taxes under this act.*''

Such statute applies only to ''taxes under this act,'' referring to the general property tax law (1 Comp. Laws 1929, § 3389 *et seq.,* as amended [Stat. Ann. § 7.1 *et seq.,* as amended]). The special assessments in the present case were not levied under the general tax law and the above-quoted statute is not applicable.

We recognize the general rule that equity will not enjoin the assessment or collection of taxes. However, we are satisfied that in the instant case, where defendant city seeks to collect the remaining instalments of the two special assessments by levy and sale of plaintiff's personal property, serious and irreparable injury would result to plaintiff if such collection were not enjoined. In *City of Detroit* v. *Wayne Circuit Judge,* 127 Mich. 604, 605, we said:

"It is contended by the relators that this injunction should be dissolved, upon the ground that it is an inappropriate remedy, and that in no case will an injunction lie to restrain the collection of a personal-property tax. That this is the general rule has been many times declared by this court. But that there may be exceptions where the property is of peculiar value to the owner, or where, as in a case like the present, a valuable franchise would be interfered with, has been affirmed. See *Henry* v. *Gregory*, 29 Mich. 68; *Osborn* v. *Bank of United States*, 9 Wheat. (22 U. S.) 738 (6 L. Ed. 204); Cooley, Taxation (1st Ed.), pp. 538, 539. We think this case should be treated as an exception to the general rule."

The exercise of equitable jurisdiction to restrain the collection of a tax on exempt property was upheld in *Webb Academy* v. *City of Grand Rapids*, 209 Mich. 523. In that case plaintiff contended that, being an educational institution, its property was exempt from taxation. It sought by chancery action to restrain the city of Grand Rapids from collecting taxes, and also to set aside an assessment for taxes. In considering the matter of plaintiff's right to injunctive relief, we said, p. 529:

"Plaintiff's bill asks equitable relief on the ground that the premises in question were as a matter of law under the statute and material facts clearly shown and practically undisputed, exempt from taxation, and the levy without legal force, *which gives equity jurisdiction to entertain the case and review the proceeding.* A concurring opinion by Chief Justice Cooley in *Albany & Boston Mining Co.* v. *Auditor General*, 37 Mich. 391, recognizes and plainly expresses the rule upon that subject as follows:

" 'I also agree in what has been many times said by the supreme court of Illinois; that equity will not interfere to restrain the col-

lection of the public revenue for mere irregularities.  *Either it should appear that the property is exempt from taxation, or that the levy is without legal power,* or that the persons imposing it were unauthorized or that they have proceeded fraudulently.'  "

Under all the facts and circumstances of the present case we conclude that plaintiff was entitled to the injunctive relief granted by the decree of the trial court.

The decree is affirmed, with costs to plaintiff.

CHANDLER, C. J. and BOYLES, NORTH, BUSHNELL, and SHARPE, JJ., concurred with STARR, J. BUTZEL, J., concurred in the result. WIEST, J., did not sit.