**MOCK, Plaintiff-Appellee, v. BOYLE, etc., et al, Defendants-Appellants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20737.   Decided February 21, 1949

Kuth & Meyers, Cleveland, for plaintiff-appellee.
Richard DeNobel, Roland A. Baskin, Cleveland, for defendants-appellants.

(NICHOLS, J, of the Seventh District sitting by designation in place of MORGAN, J.)

## OPINION

By SKEEL, J.

This cause comes to this court on questions of law and fact in which the plaintiffs seek to enjoin the collection of special assessments levied on certain lots located in the E. Moran's Liberty Heights subdivision No. 1 and No. 2 in the City of Parma, Cuyahoga County, Ohio, it being the claim of the plaintiff that the total amount of the special assessment assessed against each lot exceeds the value of such lot and such assessments are therefore confiscatory and void.

The property involved in this action is located on West 83 Street, Liberty Avenue, Newport Avenue, Manhattan Avenue, Brookpark Road and Ridge Road in the City of Parma and as originally charted consisted of 371 lots. The property was owned by Ettie Moran from October, 1916 to June 1926, and except as to such lots as had been sold, it was then transferred to Joseph W. Moran and in February, 1930 the remaining lots were deeded to The Moran Land Company. Thereafter, 183 lots were deeded to the plaintiff by quit claim deed in August, 1943. Subdivision No. 1 which were the lots fronting on E. 83rd Street and on Brook Park Road, Liberty Avenue, Newport Avenue and Manhattan Avenue as far east as West 78 Street, was first laid out as the E. Moran's Liberty Heights Allotment in 1918. Subdivision No. 2 which extended easterly from Subdivision No. 1 to Brookpark Road was laid out thereafter and both subdivisions dedicated about April, 1922.

During the years of the development and sale of these two subdivisions 188 lots were sold and about 70 houses were built.

From the very beginning the owners of the subdivision sought to secure the necessary improvements to make their lots saleable. Beginning in 1922 and continuing through 1927, all of the improvements, the payment of which plaintiff now seeks to enjoin, were for the most part petitioned for as

is provided by law by the developers of the allotment or by lot purchasers and in most of these petitions it is requested that 100% of the cost of the improvements be proportionately levied against the property without regard to the value of the property. The record clearly discloses that were it not for such petitions the improvements would not have been made and the property would have remained just another piece of vacant land.

The first question presented is whether or not in considering the amount of the assessments either individually or collectively to determine whether or not they or any of them are in violation of the Constitution of Ohio, the law is clear that the interest should not be considered. This question was decided in the case of **Wilcox v. Edgerton, 103 Oh St 267** where the court in the syllabus said:

"Upon the owners' own election to pay in ten annual installments, the interest charges upon such installments are not in violation of §3819 **GC** so long as he was given the option of paying it all in one payment within the thirty-three and one-third percent."

The interest is not a part of the cost of the improvement but is rather a charge upon the taxpayer for the privilege of extending the obligation to pay such assessments in installments and which he can avoid by paying the full assessment at the time it is levied as provided by law.

The second question has to do with the right to accumulate all of the special assessments to determine whether or not the total amount of such assessments is equal to or greater than the value of the land after the improvements have been installed. Upon this point it must be remembered that the validity of an assessment must be determined as of the time when its construction is authorized. Any other rule would make it possible for subsequent legislation authorizing additional improvements to have a retroactive effect on otherwise valid contractual or vested rights.

In **36 O. Jur. 1041,** the rule as to the time of vesting of assessment liability is stated as follows:

"The liability of property to assessments for the cost of improvements for which assessments are proposed to be levied is generally fixed and determined as of the time when the construction of the improvement is directed."

It is therefore clear that the attempt to aggregate several separate assessments authorized by separate proceedings of

the City of Parma or the County Commissioners over a period of five or six years, authorizing distinct types of public improvements, no one of which is dependent upon such other improvement, for the value it bestows upon the property whose owner requested, encouraged or sanctioned it, is not authorized by law. The claim of the plaintiff limits his rights for the relief prayed for to the claim that the total special assessments are greater than the value of the land after all the improvements had been made. In support of this contention he relies on the case of **Domito v. Village of Maumee, 140 Oh St 229.** Such case does not support the plaintiff's contention.

It is true that when the case was filed it included two assessments one for sewer and one for paving. The common pleas court enjoined the collection of both assessments but on a trial de novo in the Court of Appeals, the court refused to enjoin the sewer assessment but found that the paving assessment was in violation of **Section 19, Article I of the Constitution.** This case, therefore, can be of no help to the plaintiff.

We conclude, therefore, that the plaintiff cannot aggregate assessments for the purpose of showing that their total amount when made is equal to or greater than the value of the land, after the improvements are installed.

The next question presented is the effect of the petitions signed by plaintiff's predecessor in title, particularly for the sewer and paving improvements requesting the public authorities to make the improvements, the collection of the assessments of which the plaintiff now seeks to enjoin.

Most of the petitions in part provide:

"Your petitioners further pray that the entire cost of said improvement including the cost of improving the street intersections and such part of the cost of said improvement as is ordinarily paid or required to be paid by the municipality under the provisions of §3820 GC, or under any other statute authorizing or requiring a municipal corporation to pay a part of such cost, shall be assessed in proportion to the benefits that may result from said improvement to the lots and lands fronting on said street between said points, and consent and request that said assessments be levied and collected without reference to the value of the property assessed hereunder, expressly waive any and all benefits or limitations, fixed or provided by statute restricting said assessments to 33-1/3% of the tax value of the lots and lands to be assessed, or to 33-1/3% of the actual value of said lots and lands after

the improvement is made, and further expressly agree to pay any and all assessments levied or charged against our property abutting said part of said highway for or on account of said improvement, or the making thereof, and further waive any damages or claims for damages of whatsoever kind, character or description, growing out of or resulting from said improvement or the making thereof.

Your petitioners further waive notice of the passage of any and all resolutions, ordinances, order or notice had or required for the making of said improvement, including a notice of the passage of the resolution declaring the necessity for said improvement, authorized by §3815 GC, and of the notice, amount and time of payment of any and all assessments, levied or charged, or to be levied or charged on account of said improvement, together with the notice authorized by §3895 GC."

It is claimed that these petitions were not properly established but an examination of the record discloses they were produced as public records of either the County of Cuyahoga or the City of Parma. Without clear and convincing evidence challenging their accuracy they must be accepted as true.

The plaintiff can stand in no better position than Joseph W. Moran and Ettie Moran, his predecessors in title. It will be remembered that Ettie Moran and Joseph W. Moran were the alloters of this property and that the improvements which they procured were a necessary part of such development. As to the major portion of the assessments at least the Morans waived all constitutional and statutory limitations which were a necessary prerequisite to securing such improvements on the credit of the City of Parma and County of Cuyahoga. The Morans had an absolute legal right to waive such limitations and in so doing were forever estopped from attempting to avoid the obligation imposed by the assessments.

The plaintiff cites the case of Birdsize v. Village of Clyde in support of his contention that constitutional limitations cannot be waived by petitioning to have the improvements made. However, this case is not in point. The petition that was signed in that case was as follows:

"The undersigned, a majority of the owners of the property abutting on Main Street between Elm Street and the Western Reserve and Maumee turnpike do hereby petition your body for the improvement of said street between said points and request the passage of the necessary ordinance, assessing

the cost thereof as follows: One-third to be assessed upon the general tax list, and two-thirds upon the abutting property in proportion to the feet front; to which assessment we do hereby agree. The improvement desired, consists of sewering and constructing the necessary culverts or drains, grading, paving and setting curb and gutter stones."

The court correctly held that such petition must have meant assessments not in excess of the statutory limitation or to put it in another way, that in signing such petition it must have been intended to have included the statutory limitation. In the case we are now considering the petitions directly waived such limitations.

That such a petition is a waiver of constitutional and statutory limitations is supported by the following cases:

**DeArmond v. Hamilton, 27 Oh Ap 258.**

Thorton v. Cincinnati, 4 C. C. (N. S.) 31.

We conclude therefore that the plaintiff is estopped by the conduct of his predecessor in title from seeking to enjoin the collection of the assessments where the improvements were instituted upon the petition of such former owner waiving all limitations with respect to the value of the property in relation to the cost of the improvement.

And finally, the plaintiff brings this action in a court of equity seeking equitable relief. The power of a court of equity will not be invoked unless a clear right to such relief is established. The evidence as to the value of the property, after all of the improvements were in, as presented by the defendants, is far more convincing than that presented by the plaintiff. Also it seems to the court that after a delay of fifteen years without objection to the assessments and after having paid a substantial portion thereof, to declare now that they are illegal and uncollectible, thus putting upon the general taxpayers the cost of valuable improvements that benefit only the land of the plaintiff would not reach an equitable result.

For the foregoing reasons a decree is entered for the defendants. Order see journal. Exc.

NICHOLS, J, HURD, J, concur.