PARENTE ET AL., APPELLEES, *v.* DAY ET AL., APPELLANTS.

[Cite as Parente v. Day, 16 Ohio App. 2d 35.]

(No. 28686—Decided September 26, 1968.)

*Messrs. Hennessy, Murray & Waag*, for appellees.
Mr. *John T. Corrigan*, prosecuting attorney, and *Mr. John Dowling*, for appellants.

CORRIGAN, C. J. As an appeal on questions of law and fact from the Common Pleas Court of Cuyahoga County, this cause is before us for hearing *de novo* upon the pleadings and the stipulations.

The action was initiated by plaintiffs, appellees herein, against the County Commissioners, the County Sanitary Engineer, the Treasurer of Cuyahoga County and the Auditor of Cuyahoga County, seeking to enjoin the further collection and enforcement of collection of tap-in charges which were levied by the County Commissioners against properties of plaintiffs. These charges were certified to the County Auditor who placed them upon plaintiffs' tax duplicate for collection in September 1965.

On November 14, 1960, the County Commissioners of Cuyahoga County adopted a resolution whereby they authorized construction of a sewage treatment plant and created an assessment district in the city of Brecksville. Sometime between November 14, 1960, and July 9, 1964, the homes owned by plaintiffs were built and connected with the assessment district sewage system, even though these homes were physically located outside this district. On July 9, 1964, after the tap-ins had been completed, the Board of County Commissioners for the first time established a schedule of tap-in charges for the homes owned by the plaintiffs and their neighbors. On December 1, 1964,

the board sent the plaintiffs and others a copy of the resolution establishing the tap-in charges; a notice of the board's intention to make an assessment in lieu of a tap-in charge; notices as to the amount due from each property owner; and, finally, a waiver-of-notice-and-consent-to-assessment form which allowed an installment payment of the charge in return for a promise on the part of the property owners not to contest the charge.

The most important paragraph of the waiver-and-consent form reads:

"The undersigned do further waive any restrictions, limitations, resolutions, notices, hearings, rights, irregularities, or deficits, if any, in the proceedings in connection with such assessments."

Plaintiff homeowners signed the above agreements and paid several installments on the assessments. They then petitioned the Court of Common Pleas to enjoin further collection of the tap-in charges. The lower court declared that the tap-in charges were illegal and void, and that plaintiffs could not waive their rights to dispute this illegal charge. The defendant commissioners appeal. They contend that any illegality or irregularity in the assessment was waived by petitioners when they signed the waiver-and-consent form.

Four claims of error are assigned as follows:

1. The tap-in charges are unlawful and improper, since the provisions of Section 6117.02, Revised Code, require that such charges be made at the time of tap-in and made to the party obtaining a permit or permission to so tap-in.

2. The plaintiffs' execution of the "Petition and Waiver Notice" form does not constitute a waiver of their rights to dispute such illegal charges and such waiver is null and void in law.

3. A contract in advance to renounce and waive one's right to appeal to the courts for the redress of wrongs is void and of no effect.

4. A tap-in charge is a privilege and not a direct benefit so as to constitute a tax or assessment and is recoverable in law.

Assignment of error number one is clearly well taken because of the failure to follow the requirements of Section 6117.02, Revised Code.

The other questions are then presented: first, whether a property owner can waive his right to appeal by signing a waiver-and-consent form of the type used in the instant case; and, second, whether in this case the waiver form estops the plaintiffs from contesting the assessment.

Municipal governments commonly use waiver-and-consent forms in assessment cases, and generally these agreements are upheld. McQuillin, Municipal Corporations, Sections 52.15, 39.98, 37.41 (3 Ed. 1965); see, Annotation, 9 A. L. R. 636 (1918). Likewise, in Ohio, courts have upheld the validity of such agreements. See *State, ex rel. Columbus,* v. *Mitchell* (1877), 31 Ohio St. 592; *Butt* v. *Green* (1876), 29 Ohio St. 667; *Thornton* v. *Cincinnati* (1904), 4 C. C. (N. S.) 31; *Mock* v. *Boyle* (1949), 53 Ohio Law Abs. 567. To constitute a valid waiver there must be an existing right, knowledge of that right, and an intention to relinquish such right. Where the waiver is based upon an agreement, consideration is also necessary. *Prudential Ins. Co. of America* v. *Joyce Bldg. Realty Co.* (1943), 44 Ohio Law Abs. 481; *Karl Kiefer Machine Co.* v. *Henry Niemes, Inc.* (1948), 82 Ohio App. 310; 56 American Jurisprudence 115, Waiver, Section 15 *et seq.;* 20 Ohio Jurisprudence 2d 465, Estoppel and Waiver, Section 7.

Plaintiffs take the position that the waivers they executed are contrary to public policy and void since the waiver denies them their right to go to court to contest the illegal tap-in charges. Plaintiffs rely on *Myers* v. *Jenkins* (1900), 63 Ohio St. 101. As defendants point out, however, the Supreme Court in *Myers* v. *Jenkins* stated at page 120:

"* * * The distinction is this: after a right has accrued or an obligation has been incurred a party may waive his rights or refuse and neglect to enforce them, or he may **by contract bind** himself to submit the matter to arbitration or other special remedy. * * *"

Continuing, at page 121, the Supreme Court said:

"* * * but the ultimate adjudication of the questions

of law must remain in the courts, unless waived after the rights have accrued, or the obligations have been incurred. Jurisdiction cannot be conferred upon courts by contract, and it cannot be taken away by contract; but in certain cases a party may be estopped by his contract from invoking the jurisdiction and aid of a court in his behalf.''

Defendants maintain that the plaintiff homeowners waived their right to contest the action only after that right had accrued.

In *Myers* v. *Jenkins, supra,* the court held that a lodge member was not precluded from suing in a court of law for lodge benefits merely because the constitution of the lodge required members to adjudicate all controversies in the lodge tribunals. The court held that an agreement made in advance of the accrual of a cause of action to deprive the courts of their jurisdiction was illegal and unenforceable. It is submitted that the instant situation is entirely different. Here, the property owners' right to sue in court, or to protest the assessment, had already accrued. In *Myers* v. *Jenkins, supra,* the plaintiff allegedly waived his rights in advance of any dispute merely by joining the lodge and submitting to its constitution. Here, the problem had already occurred, the assessment had been made when the property owners waived their rights. The better reasoning on this issue is found in defendants' brief, where it is stated on page 3:

''It is obvious that the case at bar falls within the general rule announced in *Butt* v. *Green*, 29 Ohio St. 667, 670, inasmuch as the rights of the plaintiffs *had already accrued* at the time of their *waiver* and *consent* and, having had the matter in detail wholly within their consideration for 15-31 days, they are charged with having knowingly and intelligently waived their accrued rights.'' (Emphasis appellants.')

Since the waiver agreement is supported by consideration and is legally sufficient, the answer to the first question is in the affirmative; the waiver agreement, in itself. is valid. The second question, however, which asks whether the signed waiver-form estops the plaintiffs from contesting

the assessment in this case, must be answered in the negative. The fact that the sewer assessment was completely illegal and void makes this waiver ineffective. 14 Mc-Quillin, Municipal Corporations, Section 38.213 (3 Ed. 1965). The rule is stated by the author of the annotation in 9 A. L. R. 627 (1914) at 636:

"If any underlying principle can be said to govern the waiver, or the loss by estoppel, of the right to object to an assessment for a street or sewer improvement, it is that a property owner cannot ordinarily waive or become estopped to urge the invalidity of an assessment which is void by reason of an inherent defect, either of jurisdiction or of procedure. This principle, however, is not universally recognized by the courts, the decisions in many cases being made to depend on entirely different principles or considerations. Nor is the principle similarly applied when recognized, the courts being apparently not altogether agreed as to when an assessment may be said to be absolutely void rather than merely voidable. * * *"

This general rule is also found in 48 American Jurisprudence 783, Special or Local Assessments, Section 296:

"The general rule is that objections to a special or local assessment relating to original want of jurisdiction in a body conducting the proceedings leading to an assessment, or to jurisdictional defects and irregularities in such proceedings, or other matters voiding the assessment, are not subject to the operation of an estoppel of or waiver * * *. However, although it is fundamental that statutes relating to special or local assessments are to be strictly construed against assessing authorities, and that they must be strictly followed in order to render the assessment valid, the cases are not harmonious as to particular defects which are jurisdictional and will void proceedings leading to the formation of an improvement district, construction of a local improvement, or the making of a special or local assessment, so as to preclude the operation of an estoppel or waiver with respect to them."

This reasoning was employed in *Henderson* v. *Lieber's Exr.* (1917), 175 Ky. 15, 192 S. W. 830, 9 A. L. R. 620, where

the city contended the property owner was estopped to protest an unconstitutional and void ordinance because she had stood by and made no objection to the improvements. The court said, at page 17:

"And the mere fact that the property owner failed to object to the improvements does not work an estoppel.

"The same questions arose in the case of *City of Covington* v. *Schlosser*, 141 Ky. 838, and the court announced the doctrine as follows:

" 'In disposing of this question it does not seem necessary that we should go into a discussion of the acts or conduct of the property owner, that would estop him from objecting to an assessment against his property for local improvements. The only question involved in these cases is whether or not the assessments exceeded the statutory limit. If they did, the city had no right to impose them, and the assessments in excess of the authority conferred were absolutely void. The power to make these assessments is granted alone by the statute, and by its terms alone the validity of the amount that may be charged against the property is to be determined. No question of estoppel can be brought in a case like this. A property owner cannot be estopped by his acts or conduct from objecting to the collection of assessments that are made in excess of the authority to make them. The excess assessment is void from the beginning. Or, to put it in a better way, there could be no assessment for the excess, and so the property owner could not be estopped from contesting the validity of a void act.' * * *"

The last important question in this case then is whether the admitted procedural defects, namely, imposing the assessment after the tap-in had been made, in contravention of Section 6117.02, Revised Code, makes the assessment void or merely voidable. The strict viewpoint on this issue is found in *Bartlesville* v. *Holm* (1914), 40 Okla. 467, 139 P. 273, 9 A. L. R. 627, at page 473:

"The great weight of authority leans toward a rather strict and technical application of the doctrine of estoppel, and is to the effect that, where there is jurisdiction, one

who stands idly by while a public work is being prosecuted, with full knowledge, by himself or agent, that large expenditures are being made for such public improvement which will benefit his property, or fails to appear at the proper time and present his objections, will not, after the work is completed, be afforded relief against assessments levied against the property benefited to pay for such work, either in courts of law or equity. * * *.

"There seems to be considerable confusion in the authorities on the question of what constitutes jurisdictional facts. This question is discussed in 1 Elliott, Roads and Streets (3 Ed.) Section 329, as follows:

" 'There is a material difference between proceedings void for want of jurisdiction and proceedings erroneous because of a departure from the provisions of the statute or the general rules of law. Much confusion has been produced by employing the word "void" in a loose sense, and incorrectly assigning it a meaning equivalent to voidable. The truth is, sound principle requires that it should be held that no judicial proceeding shall be deemed void where there is jurisdiction of the subject-matter and the person. Such proceedings may be erroneous, and may be avoided by an appeal or some other direct attack; but, in a just sense, they are not void. Where there is jurisdiction the judgment of the tribunal is not void, unless it is one which it was clearly beyond the power of the tribunal to render. Jurisdiction does not, however, authorize a judgment clearly and wholly beyond the power of the tribunal, even in courts of superior jurisdiction.'

"The same author (Section 607), further discussing the same question, says:

" ' * * * We venture to suggest that in some of the cases the courts have erred in pronouncing the proceedings absolutely void, and that in others, where the attack was direct, they erred in doing more than declaring the proceedings to be erroneous. If proceedings are entirely without or beyond the authority of the tribunal, then they are, of course, absolutely void; but, where they are not beyond the scope of the jurisdiction of the court, they are simply voidable.' "

The cases, however, do not always adhere to this strict separation between void and voidable.

The following irregularities in municipal assessments have been held to void the proceeding: a failure to give statutory notice to property owners concerning a proposed assessment. *Melvin* v. *Chillicothe* (1960), 112 Ohio App. 521; assessing lands outside the corporate boundaries of a city. *Port of Peninsula* v. *Bendiksen* (Wash., 1967), 429 P. 2d 859; assessing lands that were exempt from assessment. *Forest Hill Cemetery Co.* v. *Ann Arbor* (1942), 303 Mich. 56, 5 N. W. 2d 564; assessing property owners for paving of a street when it had been formally dedicated as a boulevard. *MacLachlan* v. *Detroit* (1919), 208 Mich. 88, 175 N. W. 445; assessment made in excess of the value of property. *Walsh* v. *Barron* (1899), 61 Ohio St. 15; and *Birdseye* v. *Clyde* (1899), 61 Ohio St. 27; failure to follow provisions of a city charter when making assessments. *Kerr* v. *Corsicana* (Texas, 1895), 35 S. W. 694; and *Buckley* v. *Tacoma* (1894), 9 Wash. 269, 37 P. 446. *In Kerr* v. *Corsicana, supra,* the court, after holding the assessment void, said, at page 697:

"It is also contended by appellee that appellants are estopped from denying liability, because their property was benefited by the improvement, and because, knowing the work was being prosecuted, they should have taken action to have prevented it, and not waited until the work was completed. The evidence shows that some of the appellants protested against the work being done; but, aside from this, we do not think the principle of estoppel applies in such a case. * * *. The council having failed to properly levy a tax, the appellants cannot be subjected to the payment of any part of the expense. * * *"

There is authority to the effect that even a void assessment, in certain cases, can be waived. Perhaps this was the thought of counsel for the county when he responded to a question from the trial judge as follows:

"The Court: Is it the county's position that a property owner can waive an illegal charge?

"Mr. Dowling: Yes, your Honor. That's right. The property owner can waive an illegal charge. He can waive

his constitutional and statutory rights, and we are submitting in this case that they did so waive by signing and returning these petitions."

Cases in Ohio and other jurisdictions have held that an assessment made under an unconstitutional, and presumably void, law, will not be enjoined when sufficient grounds for estoppel exist. *Mock* v. *Boyle* (1949), 53 Ohio Law Abs. 567; *Thornton* v. *Cincinnati* (1904), 4 C. C. (N. S.) 31; *Tone* v. *Columbus* (1883), 39 Ohio St. 281; *W. T. Congleton Co.* v. *Craft* (1937), 267 Ky. 750, 103 S. W. 2d 287. In all the above cases, however, there were factual reasons for raising estoppel which are not present in the case at bar. In *Mock* v. *Boyle, supra,* for instance, the property owner waited 15 years before he protested against the assessments on his property. In the meantime his property benefited from the improvements. During the 15-year period he paid the yearly charge without objection. In the instant case, there are virtually no equities, other than the waiver and consent form, favoring the defendant county. The plaintiffs did not stand by and enjoy their benefits for a long period without protest and they did not petition for the improvement. This assessment was made in an illegal manner, completely contrary to the procedure set forth in Section 6117.02, Revised Code.

It is our holding that the assessment is void and non-waiverable as to each of the plaintiffs.

Accordingly, the decree is for each of the plaintiffs as in the court below.

*Judgment for plaintiffs.*

SILBERT and ARTL, JJ., concur.