[Cite as *Williams v. Schneider*, 2017-Ohio-9152.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**Nos. 104201, 104206, and 104232**

---

# JACQUELINE T. WILLIAMS,[1] DIRECTOR OHIO DEPARTMENT OF COMMERCE

## PLAINTIFF

vs.

# JOANNE C. SCHNEIDER, ET AL.

### DEFENDANTS-APPELLANTS

---

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART
AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CV-04-548887, CV-05-555252, CV-05-555408, CV-05-555412,
CV-05-558095, CV-05-559117, CV-05-559879, CV-05-571494, CV-05-572965
CV-05-560633, CV-05-564814, CV-05-569073, and CV-06-592402

**BEFORE:** Jones, J., Kilbane, P.J., and E.T. Gallagher, J.
**RELEASED AND JOURNALIZED:** December 21, 2017

---

[1]The original caption of this case was Doug White, Director, Ohio Department of Commerce v. Joanne C. Schneider, et al. In accordance with App.R. 29(C), the court substitutes Jacqueline T. Williams, the present Director of the Ohio Department of Commerce, for Doug White.

**ATTORNEYS FOR APPELLANTS**

**For Cleveland Construction, Inc.**

James R. Small
James L. Ferro
Cleveland Construction, Inc.
8620 Tyler Boulevard
Mentor, Ohio 44060

**For Home Savings and Loan Company of Youngstown**

Richard J. Thomas
Jerry R. Krzys
Henderson Covington Messenger,
Newman & Thomas Co., L.P.A.
6 Federal Plaza Central, Suite 1300
Youngstown, Ohio 44503

Charles Richley Raley Jr.
Michael J. Sikora
Sikora Law L.L.C.
737 Bolivar Road, Suite 270
Cleveland, Ohio 44115

**For City of Parma Heights**

Darrel A. Clay
Robert T. Hunt
Charles T. Riehl
Walter & Haverfield, L.L.P.
1301 East 9th Street, Suite 3500
Cleveland, Ohio 44114

**ATTORNEYS FOR APPELLEES**

**For Matthew L. Fornshell**

M. Colette M. Gibbons
Robert M. Stefancin
Ice Miller, L.L.P.
600 Superior Avenue, East, Suite 1701
Cleveland, Ohio 44114

**For Parma Heights Land Development, L.L.C.**

Joseph H. Gutkoski
Harvey Labovitz
Tim L. Collins
Collins & Scanlon L.L.P.
3300 Terminal Tower
50 Public Square
Cleveland, Ohio 44113

**For Cuyahoga County Treasurer, W. Christopher Murray, II**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Colleen Majeski
Assistant County Prosecutor
1200 Ontario Street, 8th Floor
Cleveland, Ohio 44113

PER CURIAM:

{¶1} In the early 2000s, Joanne and Alan Schneider were involved in a Ponzi scheme that cost innocent investors millions of dollars.[2] Individual investors were not the only ones affected by the couple's fraud, and litigation resulting from the Schneiders' investment scheme is still ongoing. These consolidated appeals are the culmination of court proceedings that arose from part of the Schneiders' wrongdoings and involved investment in property in Parma Heights, a suburb of Cleveland.

{¶2} In 8th Dist. Cuyahoga No. 104201, intervenor-appellant, city of Parma Heights, appeals the trial court's judgment denying its motion for summary judgment and granting summary judgment in favor of appellee, The Home Savings & Loan Company of Youngstown, Ohio ("HSL"). In 8th Dist. Cuyahoga No. 104206, appellant Cleveland Construction, Inc. ("CCI"), also appeals the trial court's judgment denying its motion for summary judgment and granting summary judgment in favor of HSL. In 8th Dist. Cuyahoga No. 104232, appellant HSL challenges the trial court's judgments relating to the distribution of receivership assets. Additional parties to these appeals that filed appellate briefs include the receiver on the case, Matthew Fornshell, and prior owners of the subject property, Parma Heights Land Development, L.L.C., and ATC Realty Sixteen, Inc. Numerous other parties in the underlying cases are not part of this consolidated

---

[2] Over 700 investors are known to have purchased fraudulent promissory notes from Joanne Schneider, the Ponzi scheme's mastermind, totaling $60.5 million. *See Young v. FirstMerit Bank, N.A.*, 8th Dist. Cuyahoga No. 94913, 2011-Ohio-614, ¶ 6.

appeal.

{¶3} For the purposes of  judicial clarity, we consider the arguments raised in each appeal separately, but issue one consolidated opinion because the resolution of issues raised in one case impact those posed in the others.

{¶4} For the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. Procedural and Factual History

{¶5} The assigned errors raised herein concern trial court judgments relating to the priority and validity of various liens filed against parcels of real property in Parma Heights and the court's receivership orders.

### A.    The Cornerstone Properties Project

{¶6} In 2003, Pearl Development Company ("PDC"), an entity controlled by Joanne Schneider, proposed a mixed-use development project funded by private and public sources that could have potentially revitalized a large portion of Parma Heights near the intersection of Pearl Road and West 130th Street; the project was called "Cornerstone" and the involved property, "Cornerstone Properties."   The real property compromising Cornerstone Properties consisted of five separate parcels of land:   three of the parcels were aggregated into the "Pearl" property and the other two parcels were known as "Garnet" and "Ruby."

{¶7} In March 2003, the Schneiders approached CCI, a construction management firm, to discuss the Cornerstone project.    Thereafter, CCI entered into a contract with PDC to provide construction management for the project.

**{¶8}** On June 26, 2003, HSL issued a loan in the amount of $3,320,000 to the Schneiders in their personal capacities. To secure the debt, the Schneiders executed a note and an open-end mortgage in favor of HSL encumbering the Garnet property. On July 9, 2003, HSL issued a loan in the amount of $3,700,000 to PDC through its president, Joanne Schneider. In return, PDC executed a note and two separate open-end mortgages in favor of HSL encumbering the Pearl and Ruby properties. The Schneiders used $2,802,627.20 from the proceeds of the loan from HSL to satisfy two pre-existing mortgages that had previously encumbered the Pearl and Ruby properties.[3]

**{¶9}** In December 2003, Parma Heights City Council passed an ordinance authorizing the city to enter into a "Project Development Agreement" with the Schneiders and their business entities. The city and the Schneiders agreed that all reasonable costs incurred by the city for improvements to the Cornerstone Properties would be paid for by the Schneiders through service payments in lieu of taxes under a Tax Increment Financing Program ("TIF"). The contract also allowed for the collection of special assessments of 40 semi-annual payments over a 20-year period against the Cornerstone Properties if the Schneiders failed to make the payments under the TIF. The Schneiders agreed to file a petition with Parma Heights to levy a special assessment for the construction of the public improvements.

**{¶10}** In May 2004, the city passed a resolution to proceed with construction of the project. In July 2004, CCI provided PDC with a bridge loan in the amount of

---

[3] The pre-existing mortgages were referred to as the J.A.M. Pearl and the J.A.M. Lawndale mortgages.

$2,500,000 so that PDC could continue construction on the project. Unfortunately, the Schneiders' scheme fell apart soon after construction began. When the Ponzi scheme collapsed, so did the funding for the Cornerstone project and by December 2004, construction on the project had completely halted. The Schneiders defaulted on their obligations to make service payments in lieu of taxes under the TIF. Joanne Schneider eventually pleaded guilty to a number of criminal charges and went to prison. Investors and contractors scrambled to recover what they could from the Schneiders' remaining assets, but, as mentioned, litigation resulting from their criminal activities continues to the present day. The property is still not fully developed or in use, and remains the largest undeveloped parcel in the city.

{¶11} CCI filed two separate mechanic's liens in the amounts of $720,152.22 and $837,583.50 against the Pearl property pursuant to R.C. 1311.01. The affidavits supporting each mechanic's lien stated that the last day of work on the Pearl property was December 3, 2004. CCI also obtained a judgment lien against PDC for the $2,500,000 bridge loan the construction management firm had provided to the development company.

{¶12} More than a dozen separate civil actions were filed in the Cuyahoga County Court of Common Pleas as a result of the project's failure. The actions were consolidated before a single trial judge. On February 4, 2005, the trial court appointed a receiver, appellee Matthew Fornshell, to oversee the assets.

{¶13} Parma Heights' work on public improvements to the Cornerstone Properties ceased sometime in 2005 or 2006. On May 22, 2006, Parma Heights passed Ordinance 2006-16 and levied a special assessment in the amount of $2,695,852.55, which was the

amount the city had spent "to date" on improvements to the Cornerstone Properties for "construction and installation of public sanitary sewers, storm sewers, water mains, street lighting, concrete curbs, asphalt pavement sidewalks, traffic signals, other public utility lines, and all together with the necessary appurtenances thereto."

{¶14} On October 16, 2006, the city certified $3,743,190.74 to Cuyahoga County for collection, which included the $2,695,852.55 in costs and $1,047,338.19 in estimated interest over the 20-year repayment period. The amount did not include $394,366.48 in fees and expenses the city had determined it was owed pursuant to the Project Development Agreement. The city had originally estimated that it would spend about $15 million on improvements to the Cornerstone Properties.

{¶15} In the meantime, the receiver moved the court to authorize the sale of the Cornerstone Properties free and clear of any liens, claims, or encumbrances and transfer the interests of the lienholders to the proceeds of the sale. The court set forth the auction procedures and, in doing so, precluded any claims on the property via the following June 2006 order:

> The Court further finds that the sales of the properties shall be free and clear of all liens, claims and encumbrances * * *. Accordingly, all such liens, claims and encumbrances which now exist or are hereafter placed of record prior to the date of sale on or against the properties shall be, and they hereby are, extinguished as liens, claims and encumbrances against the properties; rather, the liens, claims and encumbrances against a particular property will attach to the net proceeds of the sale of that property. All such net proceedings from the sale of a Property will be held in a separate interest bearing account until further order of the Court.

{¶16} In November 2006, the Cornerstone Properties sold at auction for $7,900,000 to the McGill Property Group, L.L.C. ("McGill"). The court confirmed the

sale on January 2, 2007, and, consistent with the terms of the purchase agreement entered into at auction, issued a judgment entry stating, in part:

> 4. The sale of the Properties to the Buyer shall be free and clear of any lien, claim, or encumbrance whether known or unknown, * * * including but not limited to those liens and encumbrances expressly identified and included in the title commitment issued with respect to the Properties and incorporated by reference in this Order * * *. Sale of the Property shall be free and clear of any and all asserted or unasserted, known or unknown, statutory or contractual * * * assessments and governmental funded improvements whether assessed or not, including assessments that can be filed or certified for inclusion on the County Auditor's tax duplicate now or in the future for any improvements already made to or for the benefit of the Properties. Any and all valid and enforceable liens, claims or encumbrances of the Properties, including but not limited to any liens or claims arising from any assessments, liens or taxes, or the provisions of any governmentally funded improvements, whether assessed or not, shall be transferred, fixed and attached to the net proceeds of the sale of the Properties, with the same validity, priority, force and effect as such liens and/or claims had upon the properties immediately prior to the closing.

{¶17} The net proceeds of the sale after expenses were $6,621,496.23, and was held by the receiver in a separate account.

{¶18} Following the sale, McGill assigned its rights to Cornerstone Properties to appellee Parma Heights Land Development, L.L.C.[4] It was not until after the sale, McGill alleged, that it learned that the city had previously placed a special assessment on the property.

{¶19} On December 4, 2007, the city sought to intervene in the matter to protect its rights under the special assessment. The trial court granted the city's motion to

---

[4] Appellee Parma Heights Land Development is a privately held company that is a separate entity unrelated to the city of Parma Heights. Co-appellee ATC Realty Sixteen, Inc. bought the property in 2012 at a sheriff's sale for approximately $2,000,000 and is the current owner.

intervene. The city now alleges it is owed $4,137,557.72 pursuant to its special assessment, which includes $3,743,190.74 it spent on improvements to the Cornerstone Properties (the principal amount due plus 20 years of interest) and an additional $394,366.48 in legal fees, engineering fees, other professional fees, and miscellaneous expenses.

{¶20} On December 21, 2007, the trial court issued a Findings and Order of Distribution. The decision limited secured claims to amounts due and owing as of February 4, 2005 and stated that allowed claims would be given the following priority: (1) administrative claims, (2) secured claims, and (3) unsecured claims. The distribution order also provided for a Secured Creditor Allocation account, which the court defined as "ten percent (10%) of each Secured Claim that shall be set aside for payment of Allowed Administrative Claims." The order required the receiver to obtain the court's approval by way of application before paying an administrative claim, required the applications be served on "all parties desiring notice that have filed a Notice of Appearance," and indicated that "objections to the applications must be filed and served in accordance with the Local Rules of the Court."

{¶21} In late 2008, the trial court issued an order requiring those parties that claimed secured creditor status with respect to the Cornerstone Properties to move for summary judgment on the issue of priority of the various liens. CCI, HSL, and Parma Heights each argued their respective liens had priority. Parma Heights Land Development, L.L.C., who owned Cornerstone Properties at the time, argued that the trial court should transfer the city's assessment on the Cornerstone Properties to the proceeds

from the sale of the property.

{¶22} HSL argued that because the proceeds of its loan were used to satisfy the Pearl mortgage, its lien had priority on the Pearl property pursuant to R.C. 1311.14. CCI claimed that their mechanic's liens on the Pearl property had priority pursuant to R.C. 1311.13(A) because the first visible work occurred prior to the recording of HSL's loan. CCI further asserted that the recorded instruments upon which HSL relied were flawed, thereby negating HSL's priority argument. Parma Heights argued that its special assessment had priority against all others asserting secured creditor status.

### B. The Priority Opinion and Order

{¶23} On May 16, 2011, the trial court issued its ruling on the priority of the liens asserted by the parties ("Priority Opinion"). In its Priority Opinion, the trial court made the following determinations: (1) the ten percent Secured Creditor Allocation set up for the benefit of the receivership had priority over all other lienholders; (2) HSL's July 10, 2003 recorded mortgage satisfied the two pre-existing mortgages that encumbered the Ruby and Garnet properties; (3) HSL's mortgage lien had "priority as against all subsequently filed mechanic's liens, * * * but only as to the Ruby Property and the Garnet Property"; (4) "the Pearl Property was not encumbered by the mortgages [HSL's loan] satisfied"; (5) HSL's loan funds were not used "for improvements at the Pearl Property"; and (6) because "visible construction work commenced at the Cornerstone Properties before [HSL] recorded its mortgage," CCI's mechanic's liens took precedence as to the Pearl property.

{¶24} The trial court further found, with respect to the city's claim of priority

based on its special assessment:

> [Parma Heights] maintains that it is entitled to priority of its claims as against all others asserting secured status. The City bases its claim on legislation enacted on May 22, 2006[,] and thereafter certified to the Auditor of Cuyahoga County on October 16, 2006[,] imposing a Special Assessment against the Cornerstone Properties.
>
> * * *
>
> For a variety of reasons, the City of Parma Heights is not entitled to assert a claim of priority as against Home Savings and Loan Company or Lienholders. Putting aside for the moment the question whether the City's effort to impose its assessments is void as a matter of law, the City cannot unilaterally achieve retroactive super priority over other liens previously recognized in law.
>
> * * * [T]he liens of Home Savings and Loan Company or Lienholders clearly predate the City's October 16, 2006 Special Assessment. The fact that the City had a contractual arrangement with the previous owners, the Schneiders who were operating a Ponzi scheme, is immaterial and does not affect in any way the priority of claims subsequently perfected before the City took any action of its own.

{¶25} Following the issuance of its May 16, 2011 opinion and order, it was discovered that the order contained internal discrepancies. HSL filed a notice of appeal (8th Dist. Cuyahoga No. 96911) and we remanded the case to the trial court for a decision on HSL's previously filed motion to partially vacate the Priority Opinion. In that motion, HSL argued that the Priority Opinion mistakenly identified the Garnet property as the property to which HSL's loan applied, rather than the Pearl property. HSL further argued that the evidence demonstrated that only "$2,802,627.20 of the proceeds of the

loan [to PDC] * * * were used to satisfy the J.A.M. Pearl Mortgage," so that fact should have been included in the Priority Opinion.

{¶26} On August 29, 2011, the trial court issued a judgment entry granting HSL's motion to partially vacate the Priority Opinion. The amended judgment entry clarified that HSL's loan satisfied two pre-existing mortgages that encumbered the Ruby and Pearl properties and not the Garnet property. Based on this inadvertent error, the trial court reversed its prior determination that CCI had priority over the Pearl property, and concluded that HSL "ha[d] priority of its liens as against all [other] lienholders." The court clarified that "[t]o the extent that the court's May 16, 2011 opinion and order regarding the priority of liens held otherwise, the order is corrected consistent with the above."

{¶27} HSL and CCI separately appealed the trial court's August 29, 2011 amended judgment entry.[5] This court heard CCI and HSL's consolidated appeals relating to the Priority Opinion and affirmed the trial court's determination that HSL had priority over CCI's mechanic's liens with respect to the Pearl property. This court stated, in relevant part:

> [W]here a mortgagee substantially adheres to the provisions of R.C. 1311.14, its lien on the property has "super priority" over that of any mechanic's liens. R.C. 1311.14 gives a construction mortgage priority over mechanic's liens even if the mortgage was recorded subsequent to the effective date of the mechanic's liens.
>
> In this case, HSL provided evidence to show that: (1) it provided a

---

[5] On September 14, 2011, HSL filed a second motion to partially vacate the trial court's August 29, 2011 judgment entry, which the trial court denied.

construction loan to PDC, (2) the loan provided to PDC was used to satisfy the J.A.M. Pearl mortgage, and (3) PDC then began the Cornerstone project. This evidence was sufficient to satisfy R.C. 1311.14.

* * *

This court, therefore, cannot find that the trial court acted improperly in granting summary judgment to HSL on the priority of its lien against the Pearl property.

(Citations omitted). *Cleveland Constr., Inc. v. Schneider*, 8th Dist. Cuyahoga Nos. 96911, 97352, 97361 and 97513, 2012-Ohio-5707, ¶ 49.[6] This court clarified that the opinion was limited to issues of priority and that, "in accord with the understanding of all parties, the trial court specifically stated that the issues of validity and amounts [owed to the lienholders] were matters for later decision." *Id*. at ¶ 51.[7]

## C. The Validity Opinion and Order

{¶28} The case was remanded to the trial court for the final disposition of the assets in the receivership estate. Parma Heights, CCI, and HSL each filed additional motions for summary judgment. In an order dated June 15, 2015, the trial court issued an opinion regarding the validity of liens ("Validity Opinion"). That decision granted summary judgment in favor of HSL, finding that HSL's mortgage on the Pearl property was a valid lien and CCI's mechanic's liens were invalid. In rendering its decision, the

---

[6] Parma Heights also filed a notice of appeal, but this court dismissed the city's appeal, reasoning that there was no final appealable order: "until the court determines whether the city has a valid lien, the order determining priority remains interlocutory." *Goodman v. Schneider,* 8th Dist. Cuyahoga No. 96883, 2012-Ohio-5411, ¶ 13.

[7] This court also found that J.A.M. Pearl, not J.A.M. Lawndale, held the mortgage on the Pearl property and reversed the trial court's August 29, 2011 order as to the incorrect name. *Cleveland Constr., Inc. v. Schneider* at ¶ 55-56.

trial court rejected CCI's contention that HSL's mortgage was defectively executed and did not afford constructive notice to third parties that the mortgage encumbered the Pearl property. The trial court found that CCI failed to satisfy its burden of showing that it recorded the mechanic's liens within 75 days of its last day of work on the Pearl Property, as required by R.C. 1311.06(B)(3).

{¶29} The Validity Opinion did not address the validity of CCI's judgment lien or the city's special assessment. CCI and the city initiated appeals from the Validity Opinion, but this court dismissed the appeals for lack of final appealable orders. *White v. Schneider,* 8th Dist. Cuyahoga No. 103260, Motion No. 488703 (Oct. 1, 2015); *Bradley v. Schneider,* 8th Dist. Cuyahoga No. 103261, Motion No. 488600 (Oct. 1, 2015).

### D. Supplemental Motions

{¶30} In November 2015, HSL filed a supplemental motion for summary judgment as to the amounts owed to HSL. In the motion, HSL argued that it is owed $3,320,000 plus contractual interest on the Garnet mortgage, and $3,700,000 plus contractual interest on the Pearl and Ruby mortgages, for a total of $7,020,000, plus contractual interest at a rate of 5.25% per annum.

{¶31} The receiver filed a brief in opposition, arguing that the trial court's December 2007 Order of Distribution decision expressly stated that secured claims could not include interest or penalty charges after February 4, 2005. Thus, the receiver claimed, HSL's "request to include contractual interest at a rate of 5.25% per annum is contrary to the court's prior orders, which is the law of the case." HSL moved for leave to file a reply to the receiver's brief in opposition, which the trial court denied.

**{¶32}** Also in November 2015, CCI filed a supplemental motion for summary judgment with respect to the validity of its judgment lien. The receiver filed a brief in opposition, arguing that CCI's judgment lien was invalid. CCI moved for leave to file a reply brief, which the trial court denied.

**{¶33}** On February 11, 2016, the trial court issued a series of judgment entries. The trial court denied HSL's supplemental motion for summary judgment as to the amounts owed to HSL. The trial court limited the amount of HSL's secured claim to $6,715,183.11 and determined that HSL was not entitled to interest accrued after February 4, 2005. The court stated that "there are no additional funds in the Receivership Estate on which [HSL] has a secured claim." The trial court relied on the receiver's December 4, 2015 report filed pursuant to Local R. 26(B), where the receiver attested:

> As of December 1, 2015, the aggregate balance of the real property accounts was $8,015,086.88. The proceeds from the sale of the Cornerstone Properties account for $6,715,183.11 of that aggregate balance. * * * The balance of the Secured Creditor Allocation Account as of December 1, 2015, was $416,112.46. There have been no transfers from this account since the Receiver's last report.

**{¶34}** The trial court determined that the city's special assessment was not a valid lien because (1) it did not comply with statutory requirements, and (2) the city certified the special assessment without the trial court's consent.

**{¶35}** The trial court also denied CCI's supplemental motion for summary

judgment as to the validity of its judgment lien. The court reasoned that: (1) CCI's action in obtaining its December 3, 2004 cognovit lien and judgment lien against the Schneiders violated the trial court's December 1, 2004 injunction; (2) CCI did not qualify as a secured creditor because it was never in the business of routinely lending money nor did it have secured liens on the date services were provided; and (3) CCI had not submitted evidence to support its judgment lien despite repeated requests from the receiver for documentation to prove its lien.

{¶36} Finally, the trial court issued a journal entry instructing the receiver to "distribute any remaining assets in the Receivership to unsecured creditors in a pro rata allocation" or "to a charity of the receiver's choice" if he is "unable to distribute assets to any unsecured creditors."

{¶37} Parma Heights, CCI, and HSL now appeal from various aspects of the foregoing judgments. Upon motions of Parma Heights and CCI, the trial court granted a stay and ordered the receiver to stay distribution of all funds pending appeal, except that the receiver was to continue payment of the ongoing fees and expenses of the receivership.

## II. Law and Analysis

### A. Standard of Review — Summary Judgment

{¶38} Our review of a trial court's decision on a summary judgment motion is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). The Ohio Supreme Court has provided the following standard for courts to follow when deciding a summary judgment motion:

Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

(Citations omitted.) *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).

{¶39} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996). Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

## B.   Parma Heights' Appeal

{¶40} Parma Heights raises three assignments of error challenging the trial court's denial of its motion for summary judgment, its determination that the city's certified special assessment was invalid as a matter of law, and the court's finding that the city did not have priority over other lien claimants. Parma Heights further contends that the trial

court did not have the authority to authorize the sale of the Cornerstone Properties free and clear of the city's lien by special assessment.[8]

## 1. Lien Validity

**{¶41}** We consider the second assignment of error first, whether Parma Heights had a valid lien. If the city's lien was not valid, as the trial court held, then the issue of whether Parma Heights' lien has priority over other lienholders is moot.

**{¶42}** Ohio courts have repeatedly found special assessments to be akin to general taxes and, as a result, they are collected in the same manner as other taxes. *Cleveland Metro. Hous. Auth. v. Lincoln Prop. Mgmt. Co.*, 22 Ohio App.2d 157, 259 N.E.2d 512 (8th Dist.1970); *Collister v. Kovanda*, 51 Ohio App. 43, 199 N.E. 477 (8th Dist.1935); *State ex rel. Brown v. Cooper*, 123 Ohio St. 23, 24, 173 N.E. 725 (1930) (special assessments upon real estate for public improvements are taxes within the meaning of the statutory law); *Jackson v. Bd. of Edn.*, 115 Ohio St. 368, 372, 154 N.E. 247 (1926). In

---

[8] Parma Heights raises the following assignments of error for our review:

I. The trial court erred by concluding that Parma Heights' lien arising from a duly enacted and properly certified special assessment for improvements benefitting real property was not entitled to priority over competing liens of a construction mortgage lender and other lien claimants.

II. The trial court erred by concluding that Parma Heights's lien arising from a duly enacted and properly certified special assessment for improvements benefitting the real property in question was invalid as a matter of law.

III. The trial court erred by concluding that it could order Parma Heights not to cause a lien arising from a special assessment to be recorded on real property that was the subject of a receivership, and that it could order that property sold free and clear of a lien for an unpaid municipal special assessment enacted at the request, and with the

this case, the city originally contracted with the Schneiders and their business entities and agreed that the improvements would be paid by service payments in lieu of taxes (a TIF program) pursuant to R.C. 5709.40. Like assessments levied under R.C. Chapter 727, service payments in lieu of taxes under R.C. 5709.40 are another form of statutory special assessment. *Chu Bros. Tulsa Partnership, P.L.L. v. Sherwin-Williams Co.*, 187 Ohio App.3d 261, 2010-Ohio-858, 931 N.E.2d 1116, ¶ 10 (12th Dist.).

{¶43} The Schneiders petitioned Parma Heights to make public improvements and levy special assessments on the Cornerstone Properties. Pursuant to the petition, Parma Heights City Council passed Ordinance No. 2004–11 on May 24, 2004, declaring it necessary to construct public improvements at the Cornerstone Properties and stating that 100 percent of the improvements would be paid by the special assessments. The work began in 2004 and was completed in 2005 or 2006. Terrence Hickey, the city's finance director, averred that once the city realized that neither the Schneiders nor the receiver (after the property went into receivership) were going to develop buildings on the Cornerstone Properties that could then pay for the TIF program, it became necessary to levy a special assessment against the property.

{¶44} This court has previously held that "legislative determinations for special improvements and the procedures for such assessments are presumed valid and reasonable until a showing to the contrary has been made." *Blake v. Solon*, 8th Dist. Cuyahoga No. 65255, 1994 Ohio App. LEXIS 1688, 11 (Apr. 21, 1994). "Where a party

---

express written consent, of the property owner.

seeks to overturn an assessment on the ground that certain legal requirements were not complied with in making the assessment, such party has the burden of alleging and proving that such requirements were not met." *Id.,* citing *Schiff v. Columbus*, 9 Ohio St.2d 31, 223 N.E.2d 54 (1966).

### i. Substantial Compliance and Waiver

**{¶45}** The trial court found that Parma Heights failed to substantially comply with the statutory requirements when it levied the special assessment; therefore, the city's lien was invalid.

**{¶46}** "The authority to levy special assessments for local improvements is conferred only by statute and the validity of such assessments is conditioned upon compliance with the requirements of these statutes." *Davis v. Willoughby*, 173 Ohio St. 338, 343, 182 N.E.2d 552 (1962). "[S]tatutes imposing taxes and public burdens of that nature are to be strictly construed and any doubt as to construction or effect must be resolved in favor of those on whom the burden is sought to be imposed." *Id.*

**{¶47}** While such statutes are to be strictly construed, Ohio courts have held that substantial, not strict, compliance with the statutes is generally sufficient. *Ninth St. Community Paving Project Commt. v. Ironton*, 22 Ohio St.3d 25, 29, 488 N.E.2d 204 (1986); *State ex rel. Wise v. Solon*, 8th Dist. Cuyahoga No. 64210, 1993 Ohio App. LEXIS 5560, 8 (Nov. 18, 1993); *but see Mallo v. Dover*, 36 Ohio App. 84, 84, 172 N.E. 841 (8th Dist.1929) (notice provisions of assessing statute must be strictly conformed to).

**{¶48}** When considering whether the city substantially complied with the statutory provisions, this court also takes into consideration principles of equity. *See Ninth St.*

*Community Paving Project Commt.* at 28 ("The use of equitable principles is proper not only because appellants have sought injunctive relief, but also by virtue of this court's longstanding application of equity to real estate assessment controversies."); *see also Kellogg v. Ely*, 15 Ohio St. 64, 1864 Ohio LEXIS 103 (1864) and *Steese v. Oviatt*, 24 Ohio St. 248, 1873 Ohio LEXIS 121  (1873).

{¶49} The trial court held that the special assessment was invalid because the city failed to comply with the requirements and procedures set forth in R.C. 727.12 and 727.23 - 727.25 and the city's contract with the Schneiders did not waive any defects in the assessments because R.C. Chapter 727 does not expressly provide authority for such waivers.

{¶50} The trial court determined that the city failed to comply with R.C. 727.23, which authorizes a municipality to adopt an ordinance to proceed with a special assessment only after the expiration of the time for filing claims for damages under statute has expired.   In this case, the city adopted Ordinance 2004-11 on May 24, 2004, contemporaneous with its adoption of Resolution 2004-11.   R.C. 727.23, however, refers only to filing claims for damages under R.C. 727.18 and objections to the assessment under R.C. 727.15.   Both R.C. 727.18 and 727.15 deal solely with the owner's rights to file claims or objections.   The landowners at the time, which were the Schneiders and their business entities, never claimed they were prejudiced because they were not allowed to file a claim for damages.   The Schneiders requested the special assessment.

{¶51} The trial court also concluded that the city failed to comply with R.C. 727.24 because the city began work on the project in 2003, prior to the May 2004

passage of Resolution 2004-11 and Ordinance 2004-11. But R.C. 727.24 sets forth how construction on a public improvement may proceed, what procedure a municipality must take if accepting bids, and what to do if a low bid exceeds estimates. While it certainly may not be advisable, we do not find that the plain reading of the statute prohibits a municipality from commencing with construction before passage of its resolution and ordinance to proceed, nor have the appellees provided us with any authority to support their claims.[9] Thus, we disagree that Parma Heights' special assessment was invalid on this basis.

{¶52} The trial court also found that the city failed to comply with R.C. 727.12 because Resolution 2004-11 did not show the amount of assessment against each parcel of land to be assessed, failed to show a breakdown of the cost estimate as to each parcel, and did not comply with R.C. 727.25 because, even after the city knew the actual cost of the improvement, it failed to apportion to each parcel of land its share of the total cost of the improvement.[10]

---

[9] In 8th Dist. Cuyahoga No. 104201, appellees CCI, HSL, Parma Heights Land Development, and Fornshell each filed appellate briefs making this argument. Appellee Parma Heights Land Development filed an appellate brief advancing similar claims.

[10] It appears from the record that the city filed a revised special assessment certification list with the county auditor in April 2008, which apportioned the principal, interest, total amount, and breakdown of annual installments as to each parcel of land in Cornerstone Properties.

**{¶53}** R.C. 727.12 provides:

When it is deemed necessary by a municipal corporation to make a public improvement to be paid for in whole or in part by special assessments levied under this chapter, plans, specifications, profiles of the proposed improvement showing the proposed grade of the street and improvement after completion with reference to the property abutting thereon, and an estimate of the cost of the improvement shall be prepared and filed in the office of the clerk of the legislative authority of the municipal corporation and shall be open to the inspection of all persons interested. After such plans, specifications, profiles, and estimate of cost of the improvement have been filed as provided in this section, the legislative authority of the municipal corporation may declare the necessity for such improvement by the passage of a resolution.

Such resolution shall:

* * *

(H) Provide for the preparation of an estimated assessment in accordance with the method of assessment set forth in the resolution, showing the amount of the assessment against each lot or parcel of land to be assessed. Such estimated assessment shall be filed in the office of the clerk of the legislative authority of the municipal corporation.

**{¶54}** R.C. 727.25 provides:

After the actual cost of a public improvement authorized under section 727.23 of the Revised Code has been ascertained, the legislative authority of the municipal corporation shall by ordinance assess, in the manner provided in the resolution of necessity adopted under section 727.12 of the Revised Code, upon the lots and lands enumerated in the estimated assessment adopted under section 727.23 of the Revised Code, that portion of the total cost of the improvement to be paid for by special assessments and such assessments as to each lot or parcel of land, shall be increased or

decreased in the same proportion to the estimated assessment on each such lot or parcel of land as the actual cost of the improvement bears to the estimated cost of the improvement upon which the estimated assessment was based.

**{¶55}** Parma Heights presents two responses to the trial court's finding that it did not substantially comply with statutory requirements in passing the special assessment. First, Parma Heights argues that the Project Development Agreement it entered into with the Schneiders expressly waived any defects in the assessments. The contract provided that the "special assessments be levied and collected without limitation as to the value of the Property assessed, and waive all the following relating to the Improvement and the special assessments: * * * any and all irregularities and defects in the proceedings."

**{¶56}** With respect to special assessments, the essential elements of a waiver are "an existing right, knowledge of that right, and an intention to relinquish such right." *Marchky v. Kelleys Island*, 6th Dist. Erie No. E-89-59, 1991 Ohio App. LEXIS 318, 13 (Jan. 25, 1991), citing *Parente v. Day*, 16 Ohio App.2d 35, 38, 241 N.E.2d 280 (8th Dist.1968).

**{¶57}** In *Parente*, this court acknowledged that an assessment that is illegal and void may make a waiver ineffective. *Id.* at 40. In *Parente*, the Cuyahoga County Commissioners adopted a resolution that authorized construction of a sewage treatment plant and created an assessment in the city of Brecksville. Four years later, and after the tap-ins had been completed, the county commissioners established a schedule of tap-in charges for certain affected homes. The plaintiff homeowners petitioned the court to

enjoin collection of the tap-in charges. This court held that the failure to follow the requirements of R.C. 6117.02 made the tap-ins improper and unlawful because R.C. 6117.02 required that such charges be made at or prior to the time of the tap-in.

{¶58} This court examined the difference between void and voidable proceedings and considered whether procedural defects would void assessments. This court noted that Ohio courts had previously found some irregularities in municipal assessments that would void proceedings: failure to give notice, assessing lands outside the corporate boundaries of a city or that are exempt from assessment, assessing property owners for paving of a street when it had been formally dedicated as a boulevard, and assessment made in excess of the value of property. *Id.* at 43. But this court also recognized that, at times, such proceedings are "simply voidable," *Id.* at 42, and that "even a void assessment, in certain cases, can be waived." *Id.* at 43. This court concluded that the assessment at issue was made "in an illegal manner, completely contrary to statutory procedures" and against plaintiff homeowners who had not petitioned for the improvement in the first place. *Id.* at 44.

{¶59} The instant case is distinguishable. The Schneiders petitioned Parma Heights to make the special assessments, knowingly waived defects and irregularities, and the assessments in this case were not made in an illegal manner, completely contrary to statutory procedures. Moreover, the Schneiders who were the original landowners petitioned for the improvements, and the subsequent landowners benefitted from the improvements to the land; the appellees are not claiming that they were prejudiced by the special assessments (except to the extent that they challenge the priority of the city's lien).

{¶60} Second, the city argues that despite the issue of the validity of any waivers, it still substantially complied with statutory requirements. To support its position that it substantially complied with statutory requirements, Parma Heights cites this court's decision in *Wise*, 8th Dist. Cuyahoga No. 64210, 1993 Ohio App. LEXIS 5560, for the proposition that a municipality's determinations for public improvements and the procedures used for special assessments enjoy a presumption of validity until the contrary is affirmatively shown. *See id.* at 11, citing *Wolfe v. Avon*, 11 Ohio St.3d 81, 463 N.E.2d 1251 (1984).

{¶61} In *Wise*, the appellant argued that the trial court erred in finding the city of Solon's assessment valid because the city failed to comply with the filing requirements of R.C. 727.12 and 727.09 in combining improvement projects. This court held that the city substantially complied with the statutes because it made a bona fide attempt to do so and its noncompliance was "technical." *Id.* at 8, 11.

{¶62} The trial court in the instant case distinguished *Wise* in its February 11, 2016 opinion, which found Parma Heights' special assessment invalid. In distinguishing *Wise*, the trial court found that Solon had made a bona fide attempt to comply and substantially complied with the statutory requirements of R.C. Chapter 727, while, here, Parma Heights failed to comply with the mandatory requirements of R.C. Chapter 727. Put another way, the trial court found that the alleged violations of the statutory requirements in *Wise* were technical in nature, while the alleged violations in this case were both technical and substantive in nature.

{¶63} R.C. 727.40 provides guidance when interpreting proceedings with respect

to public improvements made by special assessment:

> Proceedings with respect to public improvements to be paid for in whole or in part by special assessments shall be liberally construed by the legislative authorities of municipal corporations and by the courts in order to secure a speedy completion of the work at reasonable cost, and the speedy collection of the assessment after the time has elapsed for its payment. Merely formal objections shall be disregarded, but the proceedings shall be strictly construed in favor of the owner of the property assessed or injured as to the limitations on assessment of private property and compensation for damages sustained.

{¶64} Thus, R.C. 727.40 provides that courts shall liberally construe proceedings with respect to public improvements to be paid for by special assessments, such as the one in this case. We find that given the waivers in the Project Development Agreement, the city's attempts to comply with statutory requirements, and our liberal construction of proceedings, the competing lienholders have not carried the burden of showing that the city failed to substantially comply with R.C. Chapter 727 in passing the special assessments.

**ii. Court Order Appointing Receiver**

{¶65} The trial court further found that the special assessment was not valid because the assessment violated the court's amended order appointing the receiver. The court's order, dated February 28, 2005, provided:

> Without prior consent from the Court, all creditors, claimants, bodies politic, parties in interest, and their respective attorneys, servants, agents, and employees, and all other persons, firms and corporations be, they hereby are, jointly and severally, enjoined and stayed from (a) commencing or continuing any action at law or suit or proceeding in equity to foreclose any lien or enforce any claim against the Receivership Assets, or against the

Receiver in any court, and (b) from executing or issuing or causing the execution or issuance out of any court of any Writ, process, summons, attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering With the Receiver in the discharge of his duties in this proceeding or With the exclusive jurisdiction of this Court over the Receivership Assets and the said Receiver.

**{¶66}** The trial court found that Parma Heights, as a lienholder, was required to comply with its order that all creditors were enjoined from commencing or continuing any proceeding to enforce any claim against the receivership without prior permission from the court. The court concluded that because the city did not ask permission from the court before it filed its special assessment, its attempt to certify the assessment failed as a matter of law. Parma Heights claims that its levying of the special assessments was not prohibited by the court's February 28, 2005 order because the assessment was not an "action at law or suit or proceeding in equity" in a court nor was it the product of an execution or issuance "out of any court" of a writ, process, summons, attachment, subpoena, replevin, execution, or other process; therefore, the city contends, the levying of the special assessment did not violate the court's order.

**{¶67}** HSL contends that the city's 2006 ordinance violated the court's February 28, 2005 order because Parma Heights, at the time it passed its 2006 ordinance, knew that the only way the city was going to be able to recover what it had expended in improvements to Cornerstone Properties was to pursue its claims in court.

**{¶68}** We agree with Parma Heights that its passage of Ordinance 2006-16 and certification of the special assessment did not violate the court's order appointing the receiver. We base this conclusion in part on the ambiguous language of the February 28, 2005 order. We also base our finding on the principles of equity. The evidence demonstrates that both the trial court and the appellees had knowledge that Parma Heights was continuing to make improvements to Cornerstone Properties after the February 28, 2005 court order, and the evidence reveals that this was at the bequest of the trial court.

**{¶69}** In an affidavit dated January 22, 2008, then-mayor Martin Zanotti averred the following:

> 8. On May 22, 2006 the Parma Heights City Council passed legislation authorizing a special assessment on the Cornerstone properties * * * for street and utilities construction.
>
> * * *
>
> 11. At a status conference in response to a question I asked the Judge about his expectations of the City[,] I was advised by him that the City should continue assisting the Court and the Receiver with preserving the receivership estate and in order to maintain the properties [sic] value.
>
> 12. Based upon the direction that I received from the Judge[,] the City expended additional taxpayer funds to preserve the receivership estate.
>
> 13. Absent the Court's instructions to continue work, the City would have halted its efforts to construct improvements on the property.[11]

**{¶70}** At his January 12, 2009 deposition, the mayor explained that once the Schneider's Ponzi scheme failed, there were no other means for the city to recoup its

---

[11] Reply memorandum in support of the city of Parma Heights Ohio's motion to intervene as of right, R. 657.

investment in Cornerstone Properties; the only option the city had was to levy special assessments against the property. The mayor explained:

> Once the property went into receivership, the city no longer had an owner [that] was going to develop the property, so the proposed means of recouping the city's investment in the property no longer was available. At that point in time, it was the only option the city had, to protect itself, was a special collector to collect its money.

R. 813, tr. 18. When asked why the city did not pass a special assessment when the property went into receivership in 2005, the mayor stated that the city "could have," but, as the mayor explained:

> I believe it was in our best interest to work with the receiver and the court to try to determine how quickly [a new] developer would come in. Once it was clear that it was going to get wrapped up in the legal process for a long period of time, the city had no other potential source for recouping its investment except on the special assessment.
>
> It was probably my decision to at least work with the courts for awhile to see how quickly this property would — it had been our hope that once it went into receivership, the property would be quickly turned over to another developer and we would be able to recoup our investment quickly with that developer. Obviously, that didn't pan out. The city had to move forward with special assessment.

R. 813, tr. 19-20.

{¶71} It is clear from the mayor's deposition testimony that the city was trying to work with the court and the receiver to determine the best course of action before it took legal action or levied the special assessments against the property to recoup its investment. The city was expecting the area would be developed, not that it would remain undeveloped or mired in years of litigation.

{¶72} We are reminded that "[w]here the rights of the parties are not clearly defined in law, broad equitable principles of fairness apply and will determine the

outcome of each case individually." *McDonald Co. v. Alzheimer's Disease & Related Disorders Assn.*, 140 Ohio App.3d 358, 747 N.E.2d 843, ¶ 16-18 (1st Dist.2000), citing *In re Estate of Cogan*, 123 Ohio App.3d 186, 188, 703 N.E.2d 858, 860 (8th Dist.1997). "In equitable matters, the court has considerable discretion in attempting to fashion a fair and just remedy." *McDonald* at *id.*, citing *Winchell v. Burch*, 116 Ohio App.3d 555, 561, 688 N.E.2d 1053 (11th Dist.1996). The court has the power to fashion any remedy necessary and appropriate to do justice in a particular case. *McDonald* at *id.*, citing *Carter-Jones Lumber Co. v. Dixie Distrib. Co.*, 166 F.3d 840 (6th Cir.1999).

**{¶73}** While this court recognizes the considerable time the trial court has invested in these consolidated cases, we have reached a different conclusion on the issue of lien validity. Based on the unique circumstances of this case, Parma Heights' second assignment of error is sustained.

### 2. Court's Authority to Authorize Sale Free and Clear of Liens

**{¶74}** In the third assignment of error, Parma Heights argues that the trial court did not have the authority to authorize the sale of the Cornerstone Properties free and clear of the city's lien by special assessment. The city claims that because the trial court decided to sell the property free and clear of all liens, the court effectively prohibited the city from being able to collect on its debt. We disagree.

**{¶75}** Generally, a special assessment levied pursuant to R.C. Chapter 727 is a lien against the land being assessed, which runs with the property. R.C. 727.27. Thus, when a new property owner purchases the property that has benefitted from construction financed by a special assessment, the new owner is responsible for the remaining

payments. This method ensures that in case of a nonpayment, the municipality has a method to recover its costs. R.C. 727.31; *C.I.V.I.C. Group v. Warren*, 88 Ohio St.3d 37, 41, 723 N.E.2d 106 (2000).

**{¶76}** R.C. 2735.04 enables a trial court to exercise its sound judicial discretion to limit or expand a receiver's powers as it deems appropriate. *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 74, 573 N.E.2d 62 (1991). "R.C. Chapter 2735 does not contain any restrictions on what the court may authorize when it issues orders regarding receivership property." *Quill v. Troutman Ent., Inc.*, 2d Dist. Montgomery No. 20536, 2005-Ohio-2020, ¶ 34. "[A]n appellate court will not disturb a trial court's judgment regarding a receiver's powers absent a showing of an abuse of discretion." *Campbell Investors v. TPSS Acquisition Corp.*, 152 Ohio App.3d 218, 2003-Ohio-1399, 787 N.E.2d 78, ¶ 34 (6th Dist.), citing *Celebrezze* at 73-74.

**{¶77}** Because R.C. Chapter 2735 does not contain any restrictions on what the court may authorize when it issues orders regarding receivership property, Ohio courts have generally found that the court's powers includes the power to authorize a receiver, and under certain circumstances, to sell property at a private sale free and clear of all liens and encumbrances. *Park Natl. Bank v. Cattani, Inc.*, 187 Ohio App.3d 186, 2010-Ohio-1291, 931 N.E.2d 623, ¶ 13 (12th Dist.).[12] "A receiver sale is an alternative

---

[12] R.C. 2735.04 was rewritten by 2014 H.B. 9, effective March 23, 2015, and provides, in part, that a "court may order that the real property be sold free and clear of all liens other than the lien of the treasurer of the county in which the real property is located for real estate taxes and assessments." R.C. 2735.04(D)(3)(a). The parties agree that the current statute is inapplicable to the case at bar.

remedy to a sheriff's sale for enforcing and satisfying a judgment." *Huntington Bank L.L.C. v. Prospect Park L.L.C.*, 8th Dist. Cuyahoga No. 97720, 2012-Ohio-3261, ¶ 9, citing *Huntington Natl. Bank v. Motel 4 BAPS, Inc.*, 191 Ohio App.3d 90, 2010-Ohio-5792, 944 N.E.2d 1210 (8th Dist). In the instant case, the record shows that the total amount owed on the mortgages and liens on the Cornerstone Properties exceeded the value of the properties as estimated before the sale; thus, as a result, the properties would probably have sold for less than what was owed. The trial court determined that "[a] sale of the Properties other than one free and clear of liens, claims and encumbrances would adversely affect the Receivership Estate and would be of substantially less benefit to the Receivership Estate." Thus, we find that the trial court maximized the benefit to the receivership estate by ordering the sale free and clear of all liens and claims, and the final sale order was not an abuse of discretion.

{¶78} The city knew about the pending receiver's sale, acquiesced to the sale, and did not object to the sale. Mayor Zanotti testified at deposition that he was aware of the trial court's order allowing the receiver to sell Cornerstone Properties, but believed the city's "special assessment trumped any legal claim on the property, and felt that short of appropriate resolution through the court, the distribution of the assets, that its special assessment would remain on the property for the present owners." R. 813, tr. 33.

{¶79} Although the mayor may have believed that the special assessment would remain as a lien on the property when it was sold, the trial court's order was unambiguous in stating that the property was to be sold free and clear of all liens in order to maximize the property's value.

**{¶80}** Finally, the trial court's order to sell the property free and clear of all liens does not preclude Parma Heights from recovery. The trial court's January 2, 2007 order confirming the sale expressly provided that all liens would be transferred, fixed, and attached to the net proceeds of the sale of the Cornerstone Properties.

**{¶81}** Thus, we find that the trial court did not abuse its discretion in allowing the receiver to sell the property free and clear of liens.

**{¶82}** Parma Heights' third assignment of error is overruled.

### 3. Lien Priority

**{¶83}** Thus far, we have determined that Parma Heights has a valid special assessment lien, but because the receiver sold Cornerstone Properties free and clear of all liens, Parma Heights cannot recover through a lien on the property. As a result, the city's only method of recovery is from the proceeds of the sale of the property. Therefore, we must determine lien priority, and to do so, we must address Parma Heights's first assignment of error in which the city argues that the trial court erred in finding that the city's special assessment lien did not have priority over other lienholders.

**{¶84}** In an order dated May 16, 2011, the trial court found:

[T]he City cannot unilaterally achieve retroactive super priority over other liens previously recognized in law.

* * * [T]he liens of Home Savings and Loan Company or Lienholders clearly predate the City's October 16, 2006 Special Assessment. The fact that the City had a contractual arrangement with the previous owners, the Schneiders who were operating a Ponzi scheme, is immaterial and does not

affect in any way the priority of claims subsequently perfected before the City took any action of its own.

{¶85} The issue is whether the city's lien, which the parties agree accrued after HSL's mortgages, has priority over HSL's mortgage lien. We answer in the affirmative.

{¶86} R.C. 5721.10 provides that

[e]xcept as otherwise provided under sections 5721.30 to 5721.43 of the Revised Code, the state shall have the first lien on the lands and lots described in the delinquent land list, for the amount of taxes, assessments, interest, and penalty charged prior to the delivery of such list."[13] "Special assessment liens, like tax liens, generally have priority over the liens of private creditors."

*Star Bank, N.A. v. Fisher Dev. Corp.*, 2d Dist. Montgomery No. 13566, 1993 Ohio App. LEXIS 2809, 5 (June 2, 1993).

{¶87} HSL does not contest the general principle that valid assessment liens have priority over mortgages. HSL contends that Parma Heights' lien does not have priority over its pre-existing mortgage because the city began construction on the Cornerstone Properties before it passed its May 24, 2004 ordinance to proceed.

{¶88} To support its position, HSL cites *Donohue v. Brotherton*, 10 Ohio Dec. 47, 1900 Ohio Misc. LEXIS 27 (1900), where the court determined that a bank's mortgage lien had priority over a village's assessment lien. In *Donohue*, a group of private property owners improved a portion of a road abutting their lots. The improvements were paid by a loan issued by a bank and secured by the lots. The lots were later annexed to the village. After the annexation, the property owners petitioned the village

---

[13]R.C. 5721.30 to 5721.43 are inapplicable to this case.

to improve the portion of the road abutting their lots and agreed to pay an assessment on their lots for the improvements. The village council passed an ordinance to install the petitioned-for improvements, entered into a contract with a contractor, and passed an ordinance to assess the lots and issue bonds to pay for the improvements, knowing the work was already done and the proceedings were for the sole purpose of paying the balance due by the property owners for the improvements. *Id.* at 49.

{¶89} The bank foreclosed on the lots. The trial court decided that the city council could not order an improvement to be made and then, after the improvement is made, assess the benefitting properties. Because the village levied the assessment after the improvements were made, the court found that the bank's mortgage lien had priority over the village's assessment lien. *Id.* at 50.

{¶90} Parma Heights distinguishes *Donahue*, arguing that it decided to make improvements on the Cornerstone Properties and determined that the improvements would be paid by special assessments prior to actually making the improvements, even though it did not pass its ordinance to proceed until May 24, 2004.

{¶91} HSL claims that work on the Cornerstone Properties actually began in 2003. HSL points to Mayor Zanotti's February 4, 2009 deposition, during which the mayor testified that he used a bulldozer at the July 11, 2003 groundbreaking ceremony and the demolition of a grocery store began the next day. The mayor also testified that the city started infrastructure work and issued contracts on the project prior to signing the Project Development Agreement with the Schneiders in December 2003.

{¶92} We find that the *Donahue* case, a Hamilton County Common Pleas Court

Case that dates from 1900, is not binding on this court and is distinguishable. In *Donahue*, the work on the lots was *finished* at the time the village council passed its assessment and the assessment was passed solely for the purpose of paying the balance due. In this case, the work on the Cornerstone Properties was not complete by the time the ordinance for the special assessment was passed, and in fact, only a fraction of work had been done on the project before the city passed its resolution and ordinance to proceed. *See Donahue* at 48.

{¶93} R.C. 5721.10 grants the city priority over other lienholders; the first lienholder is the state. When an unpaid assessment exists on a parcel of property, despite the presence of other creditors or lienholders, the state gets paid first for discharge of the lien. R.C. 323.47; *see Twin Lakes Resorts v. Thousand Adventures of Ohio*, 3d Dist. Auglaize No. 2-97-16, 1997 Ohio App. LEXIS 5828, 10 (Dec. 18, 1997). The city's lien for special assessments takes precedence over a mortgage regardless of when the mortgage was recorded. *See In re McCullom*, Bankr.S.D.Ohio No. 11-12102, 2011 Bankr. LEXIS 5793, 4-5 (U.S.Nov. 21, 2011) (pursuant to R.C. 5721.10, the state's lien for taxes included on the delinquent land list takes precedence over a mortgage regardless of when the mortgage was recorded); *Integra Bank Natl. Assn. v. 3700 Williston Northwood S & B*, N.D.Ohio No. 3:09 CV 00547, 2010 U.S. Dist. LEXIS 94034, 16 (N.D.Ohio Aug. 17, 2010) (R.C. 5301.23 sets forth the general rule that "the seniority of liens is usually determined by the chronological order in which the liens or mortgages are recorded. However, the legislature has created statutory liens and established their priority. Ohio law is quite clear. The state of Ohio shall have the first lien.") We see

no reason to deviate from this well-settled principle.

{¶94} Thus, we find that the trial court erred in finding that Parma Heights' lien by special assessment did not have priority over the other lienholders.

{¶95} Parma Heights' first assignment of error is sustained.

### 4. Amount of Lien to be Determined

{¶96} As this court has determined, Parma Heights has a valid lien that has priority over all other lienholders, except for the ten percent Secured Creditor Allocation account set up for the benefit of the receivership. While the trial court is in the best position to ultimately determine the total amount of Parma Heights' lien, it is necessary to address some of the arguments raised by the parties on appeal.

{¶97} The proceeds from the sale of the Cornerstone Properties totaled $6,720,784.74. Again, Parma Heights alleges it is owed $4,137,557.72, consisting of $3,743,190.74 spent for improvements to the Cornerstone Properties and an additional $394,366.48 in legal fees, engineering fees, other professional fees, and miscellaneous expenses incurred in connection with the Cornerstone Properties.

{¶98} HSL claims that Parma Heights is not entitled to collect $394,366.48 in legal fees, engineering fees, other professional fees, and miscellaneous expenses because those fees were not included in Ordinance No. 2006-16 nor certified to the county auditor for collection. We agree.

{¶99} R.C. 727.25 provides that after the actual cost of a public improvement has been ascertained "the legislative authority of the municipal corporation shall by ordinance

assess * * * that portion of the total cost of the improvement to be paid for by special assessments." The statute further provides that "such assessments shall be payable as provided in the resolution of necessity adopted under section 727.12 of the Revised Code, and shall be final upon the adoption of the ordinance provided for in this section, unless the ordinance and resolution are amended pursuant to section 727.251 of the Revised Code."

{¶100} R.C. 727.30 provides that the city shall certify the special assessment to the county auditor, and the auditor places the special assessment on the tax list in the amount certified, and then the county treasurer collects the certified special assessments in the same manner and at the same time as other taxes are collected.

{¶101} In this case, Parma Heights included the $394,366.48 in expenses and fees in its 2004 resolution, but omitted it from its 2006 ordinance and resolution. As previously discussed, R.C. 727.40 provides that special assessments proceedings "shall be liberally construed by the legislative authorities of municipal corporations and by the courts * * * but the proceedings shall be strictly construed in favor of the owner of the property assessed."

{¶102} In accordance with the statutes cited above, we agree with HSL that the city cannot recoup the monies it spent on legal fees, engineering fees, other professional fees, and miscellaneous expenses for the simple fact that it did not include those fees in Ordinance No. 2006-16 or certify them to the county auditor for collection. Although those fees may have been part of the Project Development Agreement, they were not included in the ordinance; therefore, the city's only recourse is with the parties it

contracted with in the Project Development Agreement (the now insolvent Schneiders and their business entities).

{¶103} Next, CCI argues that the city cannot recoup more than 33 1/3 percent of the improved value of the property pursuant to R.C. 727.03. R.C. 727.03 provides that no assessments shall be levied that would be in excess of 33 1/3 percent of the actual improved value of the lot or parcel, but R.C. 727.06 prescribes a process by which either 60 percent or 75 percent of the subject property owners may petition to pay the total cost of the improvement. The process set forth in R.C. 727.06 is what occurred in this case; the Schneider Entities, which owned 100 percent of the Cornerstone Properties, petitioned Parma Heights and agreed to have the total cost of the improvements assessed. *See Roebling v. Cincinnati*, 102 Ohio St. 460, 462, 132 N.E. 60 (1921); *Mock v. Boyle*, 8th Dist. Cuyahoga No. 20737, 1949 Ohio App. LEXIS 899 (Feb. 21, 1949); *Lewellyn v. S. Zanesville*, 43 Ohio App. 385, 392, 183 N.E. 306 (5th Dist.1932). The Schneider Entities, in effect, waived the statutory cap.

{¶104} In *Roebling*, the Ohio Supreme Court cautioned that a waiver depends on the "construction of the subject-matter of the petition itself; and in determining this the language used must be strictly construed against the municipality and in favor of the petitioners." *Id.* at paragraph two of the syllabus. We find no error with the waiver in this case. Thus, we find that the Schneider Entities waived the 33 1/3 percent cap on the special assessments, and Parma Heights was thereby allowed to assess the entire cost of its improvements to the Cornerstone Properties.

{¶105} The record shows the city spent, not including interest, $2,695,852.55 on

improvements to the Cornerstone Properties. Thus, the city can recoup the full amount of the costs it expended, $2,695,852.55. As to what amount of interest, if any, the city is owed, the trial court is in the best position to determine that. But we remind the parties of what the city stated in its appellate brief and at oral argument — the city is not looking for a "windfall." At oral argument, the city told the court it would be satisfied to recover the principal amount of $2,695,852.55 plus fees (those fees being the $394,366.48 this court found the city is not entitled to). For the sake of all parties, we hope a swift resolution will be reached, bringing an end to this litigation.

### C. CCI and HSL's Appeal

{¶106} Having established the validity and priority of Parma Heights's special assessment, we now address the arguments posed by CCI and HSL in their appeals with the understanding that our resolution of the city's appeal significantly affects the trial court's distribution order.

{¶107} As mentioned, in 8th Dist. Cuyahoga No. 104206, CCI raised five assignments of error, challenging portions of the trial court's Validity Opinion. In 8th Dist. Cuyahoga No. 104232, HSL raised six assignments of error, challenging portions of the trial court's distribution order and the trial court's denial of HSL's motion for summary judgment as to amounts owed. In addition, CCI and HSL each challenged the validity of certain receivership orders relating to the Secured Creditor Allocation.[14]

---

[14] CCI raises the following assignments of error for our review:

I. The trial court erred in failing to strike the affidavits of Stephen P. Campbell, Matthew Fornshell, and Timothy Briggs.

II.   The trial court erred in finding that the incomplete legal description attached to Appellee's mortgage provided constructive notice under Ohio law.

III.   The trial court erred in finding that Appellant's mechanic's liens were not filed within 75 days of Appellant's last date of work.

IV.   The trial court erred in finding Appellant's judgment lien was invalid and not a secured claim.

V.   The trial court erred in ordering the receiver to distribute funds to the unsecured creditors and allowing the receiver to take ten percent of the balance prior to distribution.

HSL raises the following assignments of error for review:

I.   The trial court erred in its December 31, 2015 Journal Entry by denying Home Savings' Motion for Leave to File Reply Brief to Receiver's Brief in opposition to Homes Savings' supplemental motion for summary judgment, because it is inappropriate for a receiver, a neutral officer appointed by a trial court, to take a position on contested issues between parties asserting competing priority claims to the same assets, and because the reply brief was necessary to address new arguments raised by the receiver.

II.   The trial court erred as a matter of law in its December 21, 2007 Findings and Order of Distribution by requiring ten percent of the proceeds of the sale of collateral, including the Cornerstone Properties, for secured claims to be deposited into a secured creditor allocation account for payment of administrative expenses and claims.

III.   The trial court erred as a matter of law in its February 11, 2016 journal entry and order denying the Home Savings and Loans Company's supplemental motion for summary judgment as to the amounts owed to Home Savings and Loan by finding that Home Savings's secured claims attaches only to proceeds of the sale of Cornerstone Properties maintained by the receiver in a cash collateral account, and does not attach to any other assets in the Receivership estate, including the secured creditor allocation account into which the receiver transferred part of the proceeds from the sale of the Cornerstone Properties.

IV.   The trial court erred as a matter of law in its February 11, 2016 journal entry concerning the distribution of the remaining receivership assets by directing the Receiver to disburse all remaining assets, including proceeds of the sale of the

**1. CCI's Motions to Strike Witness Affidavits**

{¶108} In its first assignment of error, CCI claims that the trial court erred when it denied its motion to strike three witness affidavits that HSL attached to its motion for summary judgment. We review a trial court's decision to deny a motion to strike an affidavit for an abuse of discretion. *State ex rel. O'Brien v. Messina*, l0th Dist. Franklin No. 10AP-37, 2010-Ohio-4741, ¶ 21. To prove the existence of an abuse of discretion, CCI bears the heavy burden to show that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶109} Civ.R. 56(E) requires that affidavits submitted during summary judgment proceedings be based on the affiant's personal knowledge.

> [W]here the nature of the facts contained in the affidavit, together with the identity of the affiant, creates a reasonable inference that the affiant has the knowledge of the facts therein, an affiant has to only state that the affiant has personal knowledge of the matter to satisfy Civil Rule 56(E).

*CitiMortgage, Inc. v. Stevens*, 9th Dist. Summit No. 25644, 2011-Ohio-3944, ¶ 15.

---

Cornerstone Properties held in the secured creditor allocation account, to the unsecured creditors when the secured creditor allocation account contained proceeds of the sale of collateral subject to Home Savings' first mortgage lien.

V. The trial court erred as a matter of law in its December 21,2007 Findings and Order of Distribution in the manner by which the trial court defined "secured claim."

VI. The trial court erred as a matter of law in its February 11, 2016 Journal Entry and Order denying Home Savings and Loan Company's supplemental motion for summary judgment as to the amounts owed to Home Savings' secured claim to the amount owed on February 4, 2005 without interest after that date.

{¶110} CCI challenges the affidavit of Stephen Campbell, who was the surveyor for the Cornerstone project. CCI claimed that Campbell was an expert witness and HSL failed to identify him as such in accordance with court orders and local rules; therefore, the court should have struck his affidavit. HSL argued that Campbell was not an expert witness, rather, he was a fact witness and the person who was most familiar with the Cornerstone properties and the location of the improvements that were to be made.

{¶111} The trial court found that Campbell was not offering expert testimony in his affidavit. We cannot say that the trial court abused its discretion in making that finding. Campbell was verifying and incorporating documents that were attached to HSL's motion for summary judgment. As president of the survey company that worked on the job, Campbell had personal knowledge of his own company's business records.

{¶112} CCI also sought to strike the affidavit of Timothy Briggs, who worked for Campbell, arguing that Briggs's affidavit contained inappropriate expert testimony. Like Campbell, Briggs testified as to his personal knowledge about the Cornerstone properties and the survey that was done on the properties; we do not find that his affidavit contained expert testimony.

{¶113} Finally, CCI sought to strike Matthew Fornshell's affidavit, arguing that the receiver was averring as a legal expert. But, as the trial court noted, Fornshell was not making statements based on his legal expertise. His averments were based on his familiarity with the Cornerstone Project, the documents he had reviewed in his position as the court-appointed receiver, and his on-site visits.

**{¶114}** In light of the above, the trial court did not abuse its discretion in denying CCI's motions to strike.   CCI's first assignment of error is overruled.

### 2.   HSL's Mortgage Lien

**{¶115}** The trial court initially granted summary judgment to HSL on the priority of its lien against the Pearl property, which this court affirmed, finding that where a mortgagee substantially adheres to the provisions of R.C. 1311.14, its lien on the property has "super priority" over that of any mechanic's liens.   *Cleveland Constr., Inc. v. Schneider*, 8th Dist. Cuyahoga Nos. 96911, 97352, 97361, 97513, 2012-Ohio-5707, at ¶ 48.   The trial court subsequently granted summary judgment in favor of HSL on the validity of its lien.   In the second assignment of error, CCI claims that the court erred in this respect because the mortgage contained an incomplete legal description, thereby creating an issue of fact whether CCI, as a subsequent lienholder, had constructive knowledge of HSL's previously recorded mortgage.

**{¶116}** As mentioned, in July 2003, PDC executed an open-end mortgage and security agreement with HSL for $3,700,000.   The mortgage was secured, in part, by the Pearl property.   Part of the documentation filed and recorded by HSL in support of its mortgage and note was an attachment, denoted "Exhibit A," which consisted of the legal descriptions of each of the three parcels that made up the Pearl property.   The legal descriptions for Parcels No. 3 and 4 were identical to the language contained in the recorded deeds.   The legal description for Parcel No. 2, however, was incomplete, containing approximately sixty percent of the legal description of the parcel.   CCI argues that the legal description was so defective that it did not provide constructive notice to

"innocent third party mechanic's lien holders such as CCI."

**{¶117}** In considering whether CCI had constructive notice of the mortgage, "'Ohio mortgage law does not set forth a precise legal description that must be included on a mortgage.'" *Acacia on the Green Condominium Assn. v. Jefferson*, 2016-Ohio-386, 47 N.E.3d 207, ¶ 17 (8th Dist.), quoting *Fifth Third Mtge. Co. v. Brown*, 2012-Ohio-2205, 970 N.E.2d 1183 (8th Dist.). R.C. 5302.12 requires a "[d]escription of land or interest in land and encumbrances, reservations, and exceptions, if any." *Id.* A properly executed mortgage is valid when it follows the form set forth in R.C. 5302.12 "in substance." R.C. 5302.12.

**{¶118}** In *Brown*, this court noted that the description of the property in a mortgage does not require a formal "metes and bounds" description. *Id.* at ¶ 13. A description of legal property "is sufficient if it is such as to indicate the land intended to be conveyed, so as to enable a person to locate it." *Id.*, citing *Roebuck v. Columbia Gas Transm. Corp.*, 57 Ohio App.2d 217, 220, 386 N.E.2d 1363 (2d Dist.1977). In *Acacia*, this court considered a mortgage that was completely lacking a property description and acknowledged that there will be situations where the lack of a description of the land prevents the subsequent lienholder from having notice of the mortgage. *Id.* at ¶ 31. But under the facts of *Acacia*, where a title examiner for the mortgagee located the property with ease and notified the mortgagee's agent of the prior encumbrance, this court found that the mortgagee had both constructive and actual notice of the mortgage in spite of the fact the mortgage lacked a property description. *Id.*

**{¶119}** The Second District Court of Appeals has held that a mortgage providing a

correct parcel number and street address was a sufficient legal description of property subject to a mortgage even if the legal description was deficient in other areas. *ABN AMRO Mtge. Group, Inc. v. Jackson*, 159 Ohio App.3d 551, 558-559, 2005-Ohio-297, 824 N.E.2d 600 (2d Dist.); *see also In re Bunn*, 578 F.3d 487, 490 (6th Cir.2009) (determining that under Ohio law, a recorded mortgage that only provided a street address of residential property and not a legal description gave sufficient notice to third parties of the existence of the mortgage). The Tenth District Court of Appeals held that when examining a mortgage for sufficiency of legal description, the issue is framed from the perspective of a subsequent purchaser or lien holder and whether the description in the mortgage is sufficient to put a third party on notice of the encumbrance. *Huntington Natl. Bank v. Coffman*, 2014-Ohio-3743, 18 N.E.3d 812, ¶ 16 (10th Dist.).

**{¶120}** In the instant case, title agent Robert Gutin averred that he reviewed and examined the deeds to the parcels in question and the mortgage to the Pearl property. He found that the legal descriptions to Parcels No. 3 and 4 were complete, but the legal description for Parcel No. 2 was incomplete. Gutin noted that the legal description for Parcel No. 2 ended abruptly at a semicolon. He also noted that the missing portions of the legal description for Parcel No. 2 were along dedicated public roadways, the boundaries of which could be determined by other instruments of record. Gutin then referred back to the source deed for Parcel No. 2, which enabled him to identify the parcel described in the mortgage as Parcel No. 2.

**{¶121}** CCI argues that there is no legal requirement for a mechanic's lien claimant to perform a title exam prior to filing a mechanic's lien. But the law does not

distinguish between claimants when it comes to property encumbrances. Constructive notice is knowledge of "circumstances which ought to have excited apprehension and inquiry in the mind of a prudent and reasonable [person]." *Wells Fargo Bank v. Schwartz*, 8th Dist. Cuyahoga No. 96641, 2012-Ohio-917, ¶ 15, citing *Varwig v. RR. Co.*, 54 Ohio St. 455, 468, 44 N.E. 92 (1896).

{¶122} The purpose of the recording statutes is to protect third parties who might acquire a legal interest in the mortgaged property. *Bloom v. Noggle*, 4 Ohio St. 45, 53-56 (1854). In addition, the recording statutes "put other lien holders on notice and * * * prioritize the liens." *GMAC Mtge. Corp. v. McElroy*, 5th Dist. Stark No. 2004-CA-00380, 2005-Ohio-2837, ¶ 16.

> Proper due diligence in any transaction involving real estate necessarily requires examination of the property record, at least insofar as the real estate is being used as collateral for a debt and the creditor wishes to establish the superiority of a lien against other existing or potential lienholders.

*Schwartz* at ¶ 16. Thus, while CCI might not have had a "legal obligation" to do a title search, we find no genuine issue of material fact that it had constructive notice that HSL's mortgage encumbered the Pearl property.

{¶123} Based on these facts, we find that CCI had constructive notice of the mortgage against the property, and the trial court did not err in granting summary judgment in favor of HSL on this basis. Accordingly, CCI's second assignment of error is overruled.

### 3. CCI's Mechanic's and Judgment Liens

{¶124} In its third and fourth assignments of error, CCI claims that the trial court

erred in denying its motion for summary judgment as to lien priority and validity.

{¶125} At this juncture, we highlight the following from the trial court's June 15, 2015 Validity Opinion:

For facial validity CCI need only show that affidavits for its Mechanic's liens list all that is required under R.C. 1311.06(A). [CCI's] mechanic's liens * * * have affidavits which on their face appear to contain all the information required under R.C. 1311.06. For the sake of argument, it may be said the CCI's mechanic's liens are valid on their face. However, whether the information is accurate or whether CCI meets the other statutory requirements are other issues requiring further examination.

{¶126} The court found that CCI had not met its burden to demonstrate that it had performed lienable work within 75 days of filing its mechanic's liens as required by R.C. 1311.06(B)(3) and that issue remained in dispute. Thus, the trial court did not outright find that CCI's mechanic's liens were invalid but still denied CCI's motion for summary judgment.

{¶127} During oral argument in this matter, counsel for CCI conceded that should this court affirm the trial court's finding that HSL's mortgage liens were valid, then the issue of whether CCI's liens were valid is moot because HSL's mortgage liens exceed the amount the receiver has retained for secured creditors to recover from. We agree, but note that the amount HSL will recover has yet to be determined because Parma Heights now stands "first in line" based on our decision in this case.

{¶128} As we have determined that HSL's mortgage liens were valid and the issue

of whether they take priority is settled, we need not consider whether the trial court erred in denying CCI's motion for summary judgment. In other words, because both Parma Heights and HSL take priority over CCI and because the amount remaining in the Secured Creditor Allocation account is far less than the amount owed to Parma Heights and HSL, whether the trial court erred in denying CCI's motion for summary judgment is moot. There is simply no money left for CCI to recover.

**{¶129}** Accordingly, CCI's third and fourth assignments of error are overruled.

### 4. Receivership Orders

**{¶130}** In its fifth assignment of error, CCI argues that the trial court erred in ordering the receiver to distribute funds to the unsecured creditors and allowing the receiver to take ten percent of the balance prior to distribution. HSL raised the same arguments in its second, third, and fourth assignments of error. Accordingly, we address these challenges to the trial court's receivership orders together.

**{¶131}** As mentioned, the trial court issued an Order of Distribution decision in December 2007. The decision provided for the creation of the Secured Creditor Allocation Account, which was defined as "ten percent (10%) of each Secured Claim that shall be set aside for payment of Allowed Administrative Claims." The Order defined "Administrative Claims" as:

> any Claims arising after February 4, 2005 for the actual fees and expenses necessary to preserve the value of the Receivership Assets, including but not limited to (1) Receiver's fees; (2) fees of professionals hired by the Receiver to assist him in the performance of his duties; (3) the costs and expenses necessary to preserve the value of the assets held in the Receivership Estate; and (4) federal, state, and local taxes incurred by the Receiver in this case.

{¶132} Initially, CCI and HSL argue that the trial court erred as a matter of law in its Order of Distribution decision by requiring ten percent of the proceeds of the sale of collateral for secured claims to be deposited into the Secured Creditor Allocation Account for payment of administrative expenses and claims. CCI and HSL contend that the distribution order violates a long established principle that "a receiver acquires no greater rights in the property put into his possession by the appointing power that the debtor had." For the foregoing reasons, we disagree.

{¶133} The primary purpose of a receiver is to carry out the orders of the court, which has the power "'to exercise its sound discretion to limit or expand a receiver's powers as it deems appropriate.'" *Natl. City Bank v. Semco, Inc.*, 183 Ohio App.3d 229, 2009-Ohio-3319, 916 N.E.2d 857, ¶ 8 (3d Dist.), quoting *Gibbs*, 60 Ohio St.3d at 74, 573 N.E.2d 62.

{¶134} R.C. 2735.04(B) sets forth the powers that a court may vest in a receiver: (1) bring and defend actions in the receiver's own name as receiver; (2) take and keep possession of property; (3) collect rents and other obligations, and compromise demands; (4) enter into contracts, including, but not limited to contracts of sale, lease, or, so long as existing lien rights will not be impacted, contracts for construction and for the completion of construction work; (5) sell and make transfers of real or personal property; (6) execute deeds, leases, or other documents of conveyance of real or personal property; (7) open and maintain deposit accounts in the receiver's name; and (8) generally do any other acts that the court authorizes.

**{¶135}** The court's action in bestowing any of these powers will be affirmed absent an abuse of the trial court's discretion. *Semco* at ¶ 11. As mentioned, an "abuse of discretion" implies a trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140.

**{¶136}** In *P.M.D. Corp. v. Hyland-Helstrom Ents., Inc.*, 63 Ohio App.3d 681, 683, 579 N.E.2d 779 (10th Dist.1990), the court defined administrative costs of a receivership as follows: "Administrative expenses of a receivership include the costs and expenses necessary to preserve the value of the assets held in the receivership and taxes incurred during the receivership." *See also Brown v. Winterbottom*, 98 Ohio St. 127, 133, 120 N.E. 292 (1918) (The cost of the custody and preservation of the property in the hands of the court is payable out of the corpus of the receivership estate.).

**{¶137}** Given the complexity and numerosity of the competing interests levied against the receivership estate, we are unable to conclude that the trial court abused its discretion by ordering a portion of the secured claims be set aside for the payment of allowed administrative fees. As stated in the trial court's Order of Distribution, the Secured Creditor Allocation was created in an effort to "preserve the value of the Receivership Assets." In our view, the trial court's creation of the Secure Creditor Allocation did not authorize the receiver to perform an act that exceeded the scope of R.C. 2735.04 as a matter of law.

**{¶138}** Fornshell, as receiver, filed numerous applications requesting the trial court to authorize the payment of administrative claims from the Secured Creditor Allocation or the receiver's operating account. We recognize the contention that Fornshell's

applications for the payment of administrative claims throughout the litigation (1) contained no supporting documentation, and (2) failed to explain how the administrative expenses paid from the Secured Creditor Allocation preserved the value of the receivership estate. That said, our review of the Fornshell's various applications involved the authorization of payment of receiver fees and itemized legal and professional services provided to the receiver. Each application provided a summary of the expenses incurred and stated that "the Receiver will submit detailed invoices for the professional services provided to the Receiver, for the Court's in camera inspection." Under these circumstances, we find the relevant expenses were "necessary to preserve the value of the assets held in the receivership."

{¶139} Based on the foregoing, we find the trial court did not abuse its discretion by approving the receiver's payments of various administrative fees and costs from the Secured Creditor Allocation.

{¶140} CCI and HSL next claim that the trial court erred in ordering the receiver to distribute any remaining funds to the unsecured creditors.

{¶141} On February 11, 2016, the court instructed the receiver to distribute any remaining assets in the receivership, including the remaining balance of the Secured Creditor Allocation, to "unsecured creditors in a pro rata allocation" or "to a charity of the Receiver's choice" if the receiver is "unable to distribute assets to any unsecured creditors."

{¶142} As stated, the trial court did not abuse its discretion by requiring ten percent of the proceeds of the sale of collateral for secured claims to be deposited into a

Secured Creditor Allocation for payment of administrative expenses and claims. Moreover, there is nothing in this record to suggest the trial court arbitrarily approved the receiver's payments of various administrative fees and costs from the Secured Creditor Allocation. That said, however, we find the trial court abused its discretion in ordering the remaining balance of the account be distributed either to the remaining unsecured creditors or to a charity of the receiver's choice.

{¶143} Generally, "courts do not have the power in receiver proceedings to take away lien rights in property which were vested by contract or by operation of law without the consent of lien holders." *Dir. of Transp. v. Eastlake Land Dev. Co.*, 177 Ohio App.3d 379, 2008-Ohio-3013, 894 N.E.2d 1255, ¶ 30 (8th Dist.), citing *Au v. Au Rustproofing Ctr., Inc.*, 5th Dist. Richland No. CA-2227, 1984 Ohio App. LEXIS 10561 (July 3, 1984). In this case, the funds placed in the Secured Creditor Allocation derived directly from the assets of each secured claim. Thus, the secured creditors in this action had vested rights in the balance of the Secured Creditor Allocation by operation of law and the trial court erred by instructing the receiver to distribute those funds to unsecured parties absent the secured creditors' consent. While the parties acknowledged at oral arguments that the remaining balance of the Secured Creditor Allocation account is minimal as a result of the amount of litigation in this case, we find the secured parties are entitled to recover the remaining balance of the Secured Creditor Allocation in the amount proportionate to the percentage of their secured claims placed into the account.

{¶144} Based on the foregoing, CCI's fifth assignment of error is overruled in part and sustained in part. HSL's second, third, and fourth assignments of error are

overruled in part and sustained in part.

## D. HSL's Remaining Assigned Errors

### 1. Denial of Motion for Leave

{¶145} In 8th Dist. Cuyahoga No. 104232, HSL argues in its first assignment of error, that the trial court erred in denying its motion for leave to file a reply brief in response to the receiver's opposition to HSL's motion for summary judgment as to amounts owed. HSL contends that it was inappropriate for the receiver to take a position on contested issues of priority and that a reply brief was necessary to address new arguments raised in the receiver's opposition brief that "could not have been anticipated."

{¶146} A trial court has broad discretion in managing its docket, setting case schedules, and scheduling orders. *Sonis v. Rasner*, 8th Dist. Cuyahoga No. 101929, 2015-Ohio-3028, ¶ 40. In this case, the trial court issued a journal entry in November 2015, which set a briefing schedule with specific dates and parameters. With respect to the arguments raised by HSL, the briefing schedule specifically stated that HSL's supplemental motion for summary judgment as to amounts owed would be resolved on the basis of "the motion and responses alone." All parties agreed to the briefing schedule. Accordingly, we are unable to conclude that the trial court abused its discretion by enforcing its briefing schedule and denying HSL's motion for leave to file a reply brief.

{¶147} HSL's first assignment of error is overruled.

### 2. Entitlement to Contractual Interest

{¶148} In its fifth and sixth assignments of error, HSL argues the trial court erred as a matter of law by limiting HSL's secured claim to the amount owed as of February 4, 2005, without contractual interest. HSL claims that because the receiver reported that it held a total of $7,037,195.12[15] in the receivership as of March 31, 2016, it was deprived of $17,195.12 in interest that accrued on its secured claim of $7,020,000.

{¶149} We find HSL's argument concerning its entitlement to contractual interest to be moot. In light of this court's resolution of Parma Heights' appeal, the value of HSL's secured claim has greatly diminished. As discussed, the city has a valid special assessment lien and has priority over all other lienholders, including HSL. The city is entitled to recoup, at minimum, the costs it expended on improvements to the Cornerstone Properties in the amount of $2,695,852.55. Because HSL does not have a first priority secured claim, the total balance held by the receiver, after payment to the city, will be significantly less than the principal balance of HSL's secured claim. Accordingly, consideration of whether HSL is entitled to contractual interest would merely be academic. *See State v. Campbell*, 8th Dist. Cuyahoga No. 103982, 2016-Ohio-7613, ¶ 7 ("A case or issue is moot when it becomes 'academic'; that is, the court can issue no decision that will have any practical affect on the controversy."), citing *State ex rel. Cincinnati Enquirer v. Hunter*, 141 Ohio St.3d 419, 2014-Ohio-5457, 24 N.E.3d 1170, ¶ 4.

{¶150} In light of the above, HSL's fifth and sixth assignments of error are

---

[15] The total amount included funds held in the Secured Creditor Allocation account.

overruled.

### III. Conclusion

{¶151} Based on the foregoing, we find Parma Heights' lien is valid and the city has priority over all other lienholders. Thus, the city can recoup the full amount of the costs it expended, and the trial court is instructed to determine on remand what amount of interest, if any, the city is owed.

{¶152} With respect to CCI's assigned errors, we find the trial court did not err by denying CCI's motion to strike three witness affidavits attached to HSL's motion for summary judgment. In addition, we find that CCI had constructive notice of the mortgage against the property, and the trial court did not err in granting summary judgment in favor of HSL on this basis. Because Parma Heights and HSL take priority over CCI, we find CCI's arguments concerning the validity of its liens to be moot.

{¶153} As argued by CCI and HSL, we reverse the trial court's judgment concerning its order that the remaining balance of the Secured Creditor Allocation account be distributed among remaining unsecured creditors or to a charity of the receiver's choice instead of to the secured creditors.

{¶154} Regarding HSL's remaining assigned errors, we find the trial court did not abuse its discretion by enforcing its briefing schedule and denying HSL's motion for leave to file a reply brief. Further, issues concerning HSL's entitlement to accrued interest have been rendered moot by our resolution of Parma Heights' appeal. We recognize that our decision significantly impacts HSL's secured interest.

{¶155} On remand, the trial court is instructed to redistribute the balance of the proceeds from the sale of the Cornerstone Properties and the Secured Creditor Allocation account consistent with the mandates of this opinion.

{¶156} The consolidated cases are affirmed in part, reversed in part, and remanded for proceedings in accordance with this opinion.

It is ordered that the parties bear their own costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
LARRY A. JONES, SR., JUDGE


_____
MARY EILEEN KILBANE, PRESIDING JUDGE


_____
EILEEN T. GALLAGHER, JUDGE